[Civ. No. 11210.   Second Appellate District, Division One.—April 30, 1937.]

KANAME TOKAJI et al., Appellants, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Clare Woolwine and Leonard Comegys for Appellants.

U. S. Webb, Attorney-General, and Walter L. Bowers, Deputy Attorney-General, for Respondents.

DORAN, J.—This is an appeal from an order sustaining a demurrer to a petition for a writ of mandate as well as from the judgment discharging the alternative writ and dismissing the petition.

The petition set forth that each petitioner for some years last past had owned a cafe or restaurant in or near the city of Los Angeles; that prior to the year 1936 each had held an "On Sale Distilled Spirits License" issued by the State Board of Equalization; that each sought from said board a license for the year 1936 and in each case said board refused to allow petitioners to file such applications, giving as reasons therefor that petitioners were not citizens of the United States and hence were not eligible as licensees. The petition contained the further allegation that petitioners were otherwise qualified to hold such "On Sale" licenses and that the refusal by said board to grant said licenses would result in the loss to said petitioners of their respective businesses.

The prayer to the petition and the alternative writ of mandate issued thereon required respondents to grant permission to file said applications and to consider and allow the same if no reasons for denial thereof existed other than the fact that petitioners were not citizens of the United States. The demurrer to the petition was sustained without leave to amend and a judgment of dismissal followed.

The law governing the sale of alcoholic beverages in the state of California is to be found in an act entitled "Alcoholic Beverage Control Act" which is defined by said act to be, in part, an act to license, regulate and control the manufacture, transportation, sale, purchase, possession and disposition of alcoholic beverages; to provide for the licensing of the manufacture, distribution and sale of alcoholic beverages and to prescribe penalties for the violation of said act. (Stats.

of 1935, chap. 330, p. 1123.) Authority for the enforcement of the act is vested in the State Board of Equalization.

The act provides for ten different types of licenses, one of which entitled ''On Sale'' license authorizes the sale of alcoholic beverage, specified in the license, for consumption on the premises where sold. Another type, entitled ''Off Sale'' license, authorizes the sale, to consumers only and not for resale, of distilled spirits for consumption off the premises where sold. By section 12 of said act it is provided that ''No on-sale distilled spirits license shall be issued to any applicant who is not a citizen of the United States''.

It is the contention of appellants, who are subjects of the empire of Japan but residents of the state of California, that said section 12 of the Alcoholic Beverage Control Act which prohibits the issuing of an ''On Sale Distilled Spirits License'' to one not a citizen of the United States is invalid in that (1) it deprives appellants of their property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, (2) it denies to appellants equal protection of the laws in violation of said Fourteenth Amendment, and (3) it violates the terms, provisions and intent of the Treaty of Commerce and Navigation between the United States and Japan, and in particular articles I and II thereof, proclaimed April 5, 1911.

With respect to the contention that by the act in question appellants are deprived of their property without due process of law, it is urged by them that they cannot successfully operate their cafes without the liquor privilege and that therefore the denial of a liquor license will, in effect, deprive them of their property in violation of the fourteenth amendment. It is well settled that the right to possess, make or deal in intoxicating liquor is not a privilege, nor such a property right that state legislation prohibiting, restricting or regulating its manufacture, use, possession, distribution or sale violates the Fourteenth Amendment of the federal Constitution. (*Mugler* v. *Kansas*, 123 U. S. 623 [8 Sup. Ct. 273, 31 L. Ed. 205]; *Kidd* v. *Pearson*, 128 U. S. 1 [9 Sup. Ct. 6, 32 L. Ed. 346]; *Crowley* v. *Christensen*, 137 U. S. 86 [11 Sup. Ct. 13, 34 L. Ed. 620].) Regarding this subject it was recently declared: ''Unlike the rule with respect to the right to deal in ordinary commodities . . . there is no inherent right in a citizen to sell intoxicants . . . and a license to do so is not a proprietary right within the meaning of

the due process clause of the Constitution. . . . It is but a permit to do what would otherwise be unlawful, and consequently, a statute authorizing its revocation does not violate the due process clause, and it may be revoked without notice or hearing without invading any constitutional guarantees.'' (*State Board of Equalization* v. *Superior Court,* 5 Cal. App. (2d) 374, 377 [42 Pac. (2d) 1076].)

In connection with the second contention that appellants are denied equal protection of the laws, it is conceded, quoting from appellants' brief, ''that generally speaking, the State, in the exercise of its police power, has the right to discriminate between aliens and citizens in laws of the character of the one here involved. The case of *Bloomfield* v. *State of Ohio,* 86 Ohio St. 253 [99 N. E. 309, Ann. Cas. 1913D, 629, 41 L. R. A. (N. S.) 726], settles this point for all time, as do many other similar authorities. But this exercise of police power must, to be valid, be so exercised within reason. Appellants urge that the act itself, and particularly section 12 thereof, are such an unreasonable attempt at the exercise of police power as to render them invalid. The act permits citizens and aliens alike to receive licenses for 'off sale' of beers, wines and liquors of all kinds. Likewise it affords aliens a like privilege to hold 'on sale' licenses for beers and wines. But without apparent reason, it denies to aliens the right to hold 'on sale' licenses for distilled spirits, and this distinction, we urge, renders the Act invalid as being unreasonable.'' In other words, appellants argue that because the act distinguishes between beers and wines on the one hand and distilled spirits on the other, it is unreasonable and therefore void. No effort, however, is made by appellants to point out that these products are incapable of distinction. It cannot be assumed that the law-making body acted without reason or that the distinction complained of was accidental. On the contrary, the mere mention of the question involved suggests several reasons for the difference of classification embodied in the act. The legislature acted clearly within its power and the limitation complained of cannot be said to be an invasion of any constitutional rights. As was declared by the United States Supreme Court in *Crowley* v. *Christensen, supra,* ''There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community,

it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only.''

■ Finally, appellants submit, as the principal issue for consideration, the proposition that the statute in question violates the treaty between the United States and Japan. It is contended in this connection, and not without an abundance of authority, that where there is any conflict between a treaty made by the United States and the laws of an individual state, that the treaty will take supremacy over the state law, provided only that the treaty-making power was not exceeded. That portion of the treaty material to the issues herein involved is as follows: "The . . . subjects of each . . . shall have liberty . . . in the territories of the other to carry on trade, wholesale and retail, . . . and generally to do anything incident to or necessary for trade upon the same terms as native citizens.'' They ''shall enjoy in this respect the same rights and privileges as are or may be granted to native citizens or subjects, on their submitting themselves to the conditions imposed upon the native citizens or subjects.''

It is appellants' contention that their right to sell distilled spirits, on an equal basis with citizens, is contemplated by the treaty, and in that regard the phrase therein ''to carry on trade'' is emphasized by appellants by reason of the claim that to sell alcoholic spirits is to carry on trade. It is urged that the violation of the treaty arises from the fact that the denial to appellants of the license above mentioned is the equivalent of a denial to them of the same rights and privileges as are granted to citizens of the United States. The argument follows that this discrimination brings about a conflict between the treaty and the Alcoholic Beverage Control Act, the result of which is to render the latter invalid.

Inasmuch as the determination of the question depends upon the interpretation of the treaty, it should be noted that ''treaties are subject to the same rules of interpretation as other documents''. (*Estate of Ghio,* 157 Cal. 552, 561 [108 Pac. 516, 137 Am. St. Rep. 145, 37 L. R. A. (N. S.) 549].)

Under the present state of the law it may be conceded that it is uncertain whether there is any limitation at all on the treaty-making power of the federal government, even when the police power of the state is involved, for the Supreme Court of the United States has declared that "It is open to question whether the authority of the United States means more than the formal acts prescribed to make the convention. We do not mean to imply that there are no qualifications to the treaty-making power; but they must be ascertained in a different way." (*Missouri* v. *Holland,* 252 U. S. 416 [40 Sup. Ct. 382, 64 L. Ed. 641, 11 A. L. R. 984].) Although article 6, clause 2, of the Constitution of the United States provides that " . . . all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land", nevertheless it is important to bear in mind the Tenth Amendment to the Constitution of the United States, which holds that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people". In the case at bar the power of the state to regulate and control the liquor traffic is assailed,—a power not delegated to the United States but reserved to the state. No citation of authority is necessary to support the proposition that the liquor traffic is peculiarly the subject of police power regulation. So definitely is this established by a long line of decisions that it is settled beyond all reasonable controversy. It is true that statutes which have conflicted with treaties have been held to be invalid, but such statutes did not contain police power regulations, at least not as outstanding as the statute involved herein.

It is reasonable to assume that at the time the treaty was negotiated, the contracting parties took into account the local laws of their respective countries. Indeed the wording of the treaty itself indicates such a purpose, for, although it is provided that the subjects of each shall have liberty in the territories of the other to carry on trade, such liberty is qualified by the further provision "and *generally* to do anything incident to or necessary for trade upon the same terms as native citizens". (Italics added.) In the absence of the word *generally* the treaty rights would be without limitation. Obviously, then, the word *generally* must be interpreted to mean that the contracting parties contemplated possible exceptions. In other words, construing the word in connec-

tion with the context, it can only mean that an *approximate* application of the treaty terms was to be effected, as opposed to a *definite* and *unqualified* application. Its manifest purpose limits the phrase "shall have liberty to carry on trade" and thereby makes allowance for contingencies, of which the present controversy is an example. Thus interpreted, the Alcoholic Beverage Control Act is in harmony with the treaty.

For the foregoing reasons the judgment appealed from is affirmed. The appeal from the order sustaining the demurrer is dismissed.

York, J., concurred.

Houser, P. J., dissented.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 28, 1937.