[Civ. No. 16255.   First Dist., Div. One.   Apr. 15, 1955.]

WALLACE HOBSON et al., Appellants, v. GEORGE R. REILLY et al., Respondents.

Frank J. Comaich, Harold Brown and Everett H. Roan, Rhein, Dienstag & Levin and Jay Jackson, Jr., for Appellants.

Edmund G. Brown, Attorney General, and William M. Bennett, Deputy Attorney General, for Respondents.

BRAY, J.—Respondent State Board of Equalization revoked petitioners' general on-sale liquor license.   On the hearing of a petition for writ of mandate to annul the order of revocation, the superior court found that the findings of the board were supported by substantial evidence and by the weight of evidence and denied the petition.   Solely contending that the evidence does not support the findings of the board and court, petitioners appeal from the judgment of denial.

### RECORD

The matter was heard in the superior court on the transcript and record of the proceedings before the board, and on oral and written argument of counsel.   Petitioners were charged before the board with violating section 40, subdivision 2, Alcoholic Beverage Control Act, and section 303, Penal

Code (employment of B-girls). The board found petitioners guilty of violating section 303 and section 57, Alcoholic Beverage Control Act.*

Section 303 makes it unlawful for anyone engaged in the sale of alcoholic beverages under an on-sale license to employ upon the premises "any person for the purpose of procuring or encouraging the purchase or sale of such beverages," or to pay any person a percentage of commission for so doing. As the board expressly found that the girls involved did not receive and petitioners did not pay a percentage or commission on the sales hereafter discussed, we are only concerned with the portion of the section prohibiting employment to solicit the buying of drinks.†

Petitioners are the owners and licensees of the "Arabian Nights" club on Pacific Avenue, San Francisco. Petitioner Wallace testified that during the times in question they employed one Lili, one Diane and one Norma, also called Norell, as dancers or entertainers and one Marie and one Bobbie as waitresses. He denied that at any time any of them were employed to, or did, solicit the buying of drinks by customers, although they were permitted to mix with and drink with customers.

Liquor Control Officer McDonald testified that on the night of March 26, 1953, he bought Marie at her request four drinks of vermouth. Each time he paid the bartender for her drink the bartender took a penny out of the cash register and dropped it in a glass beside the register. When he bought a drink for himself alone, before Marie accosted him, the bartender did not transfer a penny. Officer Cute testified that on the night of March 27th he bought Diane at her request three drinks of vermouth. He also bought a drink for Diane's friend Norell, at Diane's request. Each time he paid for Diane's drinks the bartender transferred a coin from one compartment of the cash register to another. Petitioner

---

*Petitioners were not charged with violating section 57. The accusation, therefore, did not comply as to that alleged violation with Government Code, section 11503. The board having failed to find on the charge of violating section 40, subdivision 2, and petitioners not being charged with violating section 57, the only question before the superior court was and before us is the sufficiency of the evidence concerning a violation of section 303, Penal Code.

†Article XX, section 22, Constitution, provided in part: "The State Board of Equalization . . . shall have the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals."

Wallace spoke to the girls while they were drinking with Cute and went behind the bar. Cute's testimony was corroborated by Officers McDonald and Feeney to the extent that they witnessed him buy the drinks and saw the bartender transfer the coin. On two nights in succession Officer McDonald bought Lili champagne, and each time he paid for it the bartender dropped a penny in a glass beside the register. Petitioner Wallace was behind the bar at its end the second night. The officers that night made arrests and seized four glasses containing pennies and other coin. Each glass was marked with a name, "Marie," "Lili," "Dottie," and "Bobbie."

Diane testified that she was employed as a dancer and was not employed to solicit, nor did she solicit, the buying of drinks. She admitted that she and Norell drank with Officer Cute, but denied asking for the drinks. She and Norell merely accepted his invitation to have the drinks. Earlier in the evening she had bought her own drinks, paying for them at the end of the week. She had not noticed the bartender drop a penny in a glass when she was served the drinks bought by Cute. It was the practice when she bought her own drinks for the bartender to drop a penny in the glass, so that she could pay later.

The business representative of the entertainers' union testified that his union is opposed to the use of B-girls. He inspected petitioners' place four or five times a week and had never seen any of the girls soliciting drinks.

It was stipulated that the other girls named by the officers would testify substantially the same as did Diane, that they were not employed to solicit the buying of drinks nor did they solicit any of the officers to buy them a drink, but, in fact, were requested to have a drink by said officers at all times in question. Evidence of the salaries paid all the girls was given showing that they were paid a straight weekly salary or wage and not a percentage or commission.

Petitioner Wallace's explanation of the dropping of the coins in the glasses with the girls' names labeled thereon was that it was a method he had devised for accounting for the drinks each girl bought for herself. Whether the particular girl bought herself an alcoholic or a soft drink the bartender would drop a coin in her glass. At the end of the week the girls would pay Wallace 50 cents for each coin in her glass, that being the price charged her for each drink, whether it be a highball, champagne, or a soft drink.

Petitioners contend that as the board found that petitioners did not pay the girls a percentage or a commission for soliciting drinks there is no evidence, as required by section 303, Penal Code, that petitioners employed the girls to solicit the buying of drinks. While it is true that there is no direct evidence that the girls were employed to solicit drinks, the obvious and only reasonable conclusion from the facts is that they were. Coupling the fact that petitioners admit that the girls mixed and drank with the male customers, with the bartender's method of keeping track of the number of drinks bought at their request, one would have to be very gullible, indeed, to believe that the practice was to keep track of the drinks the girls bought themselves. It would be stretching the court's credulity beyond the breaking point to believe that these girls were buying their own drinks instead of the customers buying drinks for them, or that the petitioners did not include the soliciting of drinks as a part of each girl's employment. The facts in this case are almost identical with those in *Chosick* v. *Reilly*, 125 Cal.App.2d 334 [270 P.2d 547], where the court held that the inference that the licensees employed girls to solicit drinks was a reasonable one. The only difference from our case lies in the method of keeping track of the drinks solicited by each girl. There a different Roman numeral was rung up on the cash register for drinks bought for a girl from the numeral used when drinks were bought by the male customers for themselves. There, as here, the board found that the girls received no percentage or commission for soliciting drinks. The reviewing court held that the denials of the licensee and his employees only created a conflict with the circumstantial evidence, which conflict was resolved by the board against the licensee and that the board's factual decision was binding on the courts. The same is true here.

In *Cornell* v. *Reilly*, 127 Cal.App.2d 178 [273 P.2d 572], the only substantial difference from the facts in our case was that track was kept of drinks solicited by the girl employees by the bartender making a tally notation on a pad. There, too, it was claimed that these notations were only for drinks purchased by the girls themselves, to be paid for at the end of the week. There, as here, the defendant contended that all that was proved was mere solicitation by the employees; that employment for that purpose was not proved. After pointing out that guilt in disciplinary administrative proceedings of this kind must be proved to a reasonable certainty

and cannot be based on surmise, suspicion or theoretical conclusions, the court held that there was sufficient evidence to support the finding of a hiring for the purpose of solicitation. In our case, the fact that the girls were employed and were permitted to drink with the patrons is admitted. The fact that they on several occasions solicited drinks from the officers and that petitioners devised and used a method of keeping tally of those drinks is established by substantial evidence. While, apparently, the tally of drinks solicited by the girls was not kept for the purpose of paying them a commission, it obviously was kept for the purpose of determining the efficiency of each girl in increasing the employer's business. As we said in the Cornell case, *supra*, p. 186, "Under such a state of facts the inference that such solicitation was an integral part of the employment of the entertainers is not only reasonable, but almost inevitable."

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 12, 1955, and appellants' petition for a hearing by the Supreme Court was denied June 8, 1955.