[Civ. No. 16706. First Dist., Div. One. Dec. 9, 1955.]

SOL COOPER et al., Appellants, v. THE STATE BOARD OF EQUALIZATION, Respondent.

674

James C. Purcell for Appellants.

Edmund G. Brown, Attorney General, and Carl W. Wyncoop, Deputy Attorney General, for Respondent.

PETERS, P. J.—Cooper and Sanchez, as the licensees, owners and operators of a bar in San Francisco, were duly charged by the State Board of Equalization, the body then having constitutional authority to enforce the terms of the Alcoholic Beverage Act, with having violated sections 24200 and 25657 of the Business and Professions Code, and Penal Code, section 303. The hearing officer found that the charged offenses had been committed and recommended revocation of the license. The board approved this recommendation, and ordered the license revoked. The petitioners, thereupon, sought a writ of mandate in the superior court to review the board's decision. The superior court, on appropriate findings and conclusions, entered its judgment denying the application for the writ. Petitioners appeal from that judgment.

There is no need to review the evidence in detail. Suffice it to say that four enforcement officers testified that they visited the licensed premises on several occasions; that to the knowledge of the bartender, waitresses employed by the petitioners, or girls loitering at the bar, solicited the officers to buy drinks for them; that many such drinks were purchased for the girls by the officers at the solicitation of the girls; that each time the waitresses or girls solicited a drink, when the drink was served, the bartender, in a separate glass, furnished them with a small wooden or plastic stirring rod which they immediately placed in their hand bags; that this procedure was followed whether the waitresses or girls ordered straight whiskey, a mixed drink or wine. The officers observed this procedure as to drinks purchased for the waitresses or girls by other patrons of the bar. The officers also observed that when, on occasion, the girls bought drinks for them-

selves, no separate glass with a stirring rod was furnished. One of the officers observed one of the girls, at about closing time, present the stirring rods to the bartender, who counted them, and then handed the girl some money. Several of the officers testified to seeing one or the other of the appellants on the premises on several occasions while they were present and while the procedures in reference to the stirring rods were being carried on by the bartender and the waitresses and the girls. When the officers finally arrested the participants they found that all of the girls in question, including two waitresses employed by the bar, had many of these stirring rods in their possession.

The two petitioners, the owners of the liquor license involved, admitted that the bartender was employed by them, as were two of the girls, who were employed as waitresses. They denied that they ever allowed the waitresses or any girls to beg or solicit drinks in their establishment. They testified that the waitresses were paid a straight salary by check, and received no other compensation; that they had no knowledge that any girl ever solicited drinks on the premises; that it was the custom in their bar, when the patrons purchased a whiskey mixed drink, to serve the whiskey separate from the mix, together with a stirring rod, so that the patron could mix his own drink. The stirring rods are not reused. Sanchez, one of the petitioners, admitted that he was familiar with the law involved in these proceedings because in 1951 he had been charged, in connection with another bar he then operated, with the employment of persons to procure the sale of alcoholic beverages in violation of section 303 of the Penal Code, and his license was then suspended for 30 days.

On this evidence the hearing officer found, and the board adopted the findings, that on three specified dates the petitioners employed two named persons for the purpose of procuring or encouraging the purchase and sale of alcoholic beverages, and on certain specified dates knowingly permitted certain named girls to loiter on the premises for the purpose of begging or soliciting patrons of the bar to purchase them alcoholic beverages. The first charge is a violation of section 303 of the Penal Code and section 25657, subdivision (a), of the Business and Professions Code, while the second charge is a violation of section 25657, subdivision (b) of that code. The basic conclusion was that continuance of the license "would be contrary to public welfare and morals."

There can be no doubt that the evidence overwhelmingly supports the findings that employees of the bar, and the girls in the bar, solicited drinks from patrons, and that the bartender knew of and participated in this activity. Appellants make no contention to the contrary. Their basic argument is that neither of the appellants personally hired or permitted these women to solicit drinks. Without such personal participation, it is claimed, the revocation was improper.

There are several answers to this contention. The first is that the officers testified that Cooper was present on the premises on at least one occasion, for several hours, during which time the officers were solicited to buy drinks, and during which time several of the girls solicited service men patrons to buy drinks. During this period one of the officers observed the bartender pay off one of the girls when she delivered to him her stirring rods. The officers also placed Sanchez on the premises on two occasions when similar solicitation occurred. Once it was proved that the bartender, hired by appellants, knew that soliciting was going on, not only by girls in the bar but by two employees of appellants, and that such solicitation was open, obvious and frequent, and that a tally was kept of the drinks solicited, the board was justified in inferring that appellants, as the owners and operators of the bar, had the specific intent (if one is required) to hire the employees for solicitation purposes, and to permit and encourage the other girls to solicit drinks. This was the precise holding of this court in *Cornell* v. *Reilly*, 127 Cal.App.2d 178, where, at page 186 [273 P.2d 572], it was stated: ''The fact that the girls were employed by appellant is conceded. The fact that they, on numerous occasions, solicited drinks from patrons of the bar was established by substantial evidence, and is not denied. The fact that the bartender-manager Andrews knew of such solicitation was established by the record kept by the bar of all drinks consumed by the entertainers, even though paid for by a patron. Under such a state of facts the inference that such solicitation was an integral part of the employment of the entertainers is not only reasonable, but almost inevitable. Thus, even if it was necessary to establish that appellant had a specific intent to hire the employees for solicitation purposes, such fact was established by clear evidence and the reasonable inferences therefrom.''

Thus, the evidence is sufficient to support a finding that appellants personally hired or permitted these girls to solicit

drinks on the premises. But even if the evidence were insufficient in this respect, this would not help appellants. No such finding is required under the law. ▆ The appellants as the owners and operators of the bar, and as licensees, are responsible for the acts of the bartender, and of their other employees.

▆ Appellants contend that the statutes involved require that the accused licensees cannot be held responsible unless they personally hired or permitted the solicitation. This contention is not supported by either the language of the pertinent statutes or by the cases interpreting those sections.

Penal Code, section 303, reads: "It shall be unlawful for any person engaged in the sale of alcoholic beverages, other than in the original package, to employ upon the premises where the alcoholic beverages are sold any person for the purpose of procuring or encouraging the purchase or sale of such beverages. . . ."

Business and Professions Code, section 25657, states: "It is unlawful:

"(a) For any person to employ, upon any licensed on-sale premises, any hostess or entertainer for the purpose of procuring or encouraging the purchase or sale of alcoholic beverages . . .

"(b) In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting. . . ."

Appellants call attention to the fact that the sections do not expressly provide for the vicarious liability of the principal for the acts of his agent, and urge that other sections of the same act do so provide. For example, section 25601 of the Business and Professions Code provides: "Every licensee, or agent or employee of a licensee, who keeps . . . in conjunction with a licensed premises any disorderly house" etc. (See also Bus. & Prof. Code, §§ 25632, 25607, and 25661.) The omission of similar language in section 25657 is found significant by appellants.

Appellants' interpretation of the language referring to employees in these other statutes is clearly unsound. The quoted language was not used to impose a vicarious liability upon the employer for the acts of his employee, but was inserted

to add the personal liability of the employee to that of the employer. No such language was necessary in section 25657.

■ The cases are uniform in holding that a licensed employer may be disciplined to the extent of revocation of his license for the acts of his employees. In *Mantzoros* v. *State Board of Equalization*, 87 Cal.App.2d 140, 144 [196 P.2d 657], Justice Dooling had the following to say, about another section of the statute, in reference to the very contention here made: ''It is to be noticed that the question in their case is not whether they are criminally liable for their employee's act, a question which we need not decide, but whether they can be subjected to discipline by the Board of Equalization because their employee made a sale of liquor at an hour forbidden by that section. The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown.''

In *Cornell* v. *Reilly*, 127 Cal.App.2d 178, 187 [273 P.2d 572], this court, in regard to the question of vicarious liability for the very conduct involved in the instant case, after quoting with approval from the Mantzoros case, stated: ''By virtue of the ownership of a liquor license such owner has a responsibility to see to it that the license is not used in violation of law. Obviously, the economic benefits of the solicitation of drinks by the entertainers with Andrews' knowledge and participation redounded to the benefit of appellant. The responsibility for Andrews' acts in the operation of the license can and should be imputed to appellant.'' (See also *Swegle* v. *State Board of Equalization*, 125 Cal.App.2d 432 [270 P.2d 518].)

Appellants suggest that these cases erroneously interpret the statutes involved and should be overruled. We were not impressed by this argument when we wrote the Cornell case, *supra*, and are not impressed with the argument now. We think that the statutes were correctly interpreted in the two cases last quoted from, and are content to rely upon them, without further elaboration.

■ Appellants make a somewhat related argument, and that is that since the accusation charged the *licensees* with violations of the pertinent statutes, and did not refer to vicarious liability, it was incumbent on the board to prove personal violation by the licensees, and since the board did not (so it is contended) prove this, there was a fatal variance. This is, of course, a question of pleading. ■ It is well settled that a pleading alleging that defendant committed a certain act is simply an allegation that in legal effect the defendant is responsible for the act—i.e., that defendant through his agent committed the act or that defendant personally committed it. Either can be proved under an allegation that "defendant" committed the act. (*Golceff* v. *Sugarman,* 36 Cal.2d 152, 154 [222 P.2d 665].)

Appellants next contend that the statutes involved are unconstitutional in that they permit the deprivation of a valuable property right without due process. Of course a liquor license has certain attributes of property. It certainly has value and is sold commercially. But it is a type of property which the state, under the police power, has the power to control and regulate. ■ The proper rule was stated in *Kaname Tokaji* v. *State Board of Equalization,* 20 Cal.App.2d 612, 614 [67 P.2d 1082], as follows: "It is well settled that the right to possess, make or deal in intoxicating liquor is not a privilege, nor such a property right that state legislation prohibiting, restricting or regulating its manufacture, use, possession, distribution or sale violates the Fourteenth Amendment of the federal Constitution. [Citations.] Regarding this subject it was recently declared: 'Unlike the rule with respect to the right to deal in ordinary commodities . . . there is no inherent right in a citizen to sell intoxicants . . . and a license to do so is not a proprietary right within the meaning of the due process clause of the Constitution. . . . It is but a permit to do what would otherwise be unlawful, and consequently, a statute authorizing its revocation does not violate the due process clause. . . .' " (Citing *State Board of Equalization* v. *Superior Court,* 5 Cal.App.2d 374, 377 [42 P.2d 1076]. See also *People* v. *Jemnez,* 49 Cal.App.2d Supp. 739 [121 P.2d 543].)

■ As long as the board acted within its jurisdiction, and as long as its proceedings complied with the Administrative Procedure Act (Gov. Code, § 11370 et seq.), and as long as there was no abuse of discretion, and as long as its findings are supported by substantial evidence, a revocation

of a license cannot be successfully assailed as a deprivation of property without due process. All procedural requirements were met in this case. Appellants admit that this is so. (App.Op.Br. 11.) Certainly the type of hearing here involved complies with constitutional requirements. (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125 [173 P.2d 545].)

Appellants next assail the two statutes on the ground that they are void for the want of the certainty required by law. ▮ It is, of course, the law that penal statutes may not be uncertain or vague, and must fairly apprise the public of the conduct prohibited. ▮ Do these statutes fail to meet that test? We think not. Appellants argue that the language of the statutes "to employ . . . any person for the purpose of procuring or encouraging the purchase or sale of such beverage" is so broad as to apply to legitimate entertainers, who by providing entertainment necessarily encourage the sale of drinks, or to a waitress who asks a patron if he desires a drink. The contention requires but scant consideration. The Legislature obviously intended to prohibit the direct "procuring or encouraging the purchase" of alcoholic beverages, and not the incidental increase of consumption of liquor by persons watching entertainment furnished by the management. ▮ We have no difficulty in holding that the statute clearly and without ambiguity only prohibits direct solicitation of drinks, and does not prohibit the purchase of drinks by patrons of their own initiative and volition while watching entertainment or when asked by a waitress if they desire service. The courts have had no difficulty in ascertaining what these statutes prohibit. (See *Chosick* v. *Reilly,* 125 Cal.App.2d 334 [270 P.2d 547] ; *Cornell* v. *Reilly,* 127 Cal.App.2d 178 [273 P.2d 572] ; *Hobson* v. *Reilly,* 132 Cal.App.2d 275 [281 P.2d 877].)

Appellants make frequent reference in their briefs to the fact that there was no evidence that the girls involved solicited any of the patrons for purposes of prostitution, and seem to contend that without such solicitation the mere solicitation of drinks is not immoral. There is no merit to this contention. ▮ The Legislature has seen fit to prohibit the soliciting or begging of drinks, or the hiring or permitting of persons in the bar to do so. The Legislature did so because it felt that such acts were morally reprehensible. This was within the legislative orbit. It is not a judicial question at all, but one of legislative policy.

 The last mentioned argument leads to the next contention of appellants, and that is that the penalty of revocation was excessive. In at least three prior cases, being the three cases last cited, the revocation of licenses was affirmed for conduct similar to that involved here. Obviously, the board did not abuse its discretionary powers in revoking the license for the conduct here involved.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.