[Civ. No. 11370.   Third Dist.   Nov. 7, 1966.]

LOS ROBLES MOTOR LODGE, INC., Plaintiff and Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Defendants and Respondents.

Richard A. Case for Plaintiff and Appellant.

Thomas· C. Lynch, Attorney General, E. G. Funke, Assistant Attorney General, and Robert W. Jarvis, Deputy Attorney General, for Defendants and Respondents.

PIERCE, P. J.—The on-sale general liquor license of Los Robles Motor Lodge, Inc., was suspended for violations of Business and Professions Code section 25601 (disorderly house) and section 25180 (possession of unbroken bottles). Decisions by the department against Los Robles, both original and on motion for reconsideration, by respondent appeals board, and after petition to the superior court for a writ of mandate, were all adverse to Los Robles.

We find wholly without merit all of the contentions made to this court on appeal. Those contentions are: (1) the accusations were inadequate to give Los Robles notice sufficient to satisfy due process; (2) the findings are not supported by substantial evidence; (3) inadmissible hearsay evidence was introduced; (4) there was an abuse of discretion in that another licensee guilty of the same offenses received a lesser penalty; (5) there was entrapment; and (6) said section 25601 is void for vagueness. The last of these contentions presents a question of first impression in California. After summarizing the facts, we will discuss it first.

Through the testimony of two special investigators, Schmitt and Harris, the department proved that between March 3, 1964, and March 8 these agents were solicited by two females, Pattie and Jean, for acts of prostitution on seven separate occasions. All of these acts took place in the bar of Los Robles. The first, by the girl, Pattie, was accompanied by physical acts of sexual enticement.[1] All solicitations were accompanied by a discussion of the proposed monetary consideration. Most of the solicitations (including the one described in footnote 1) were within sight and earshot of one of the two, or both, bartenders of the establishment. In several conversations between Schmitt and bartender Glenn Gard an awareness of the girls' activities was clearly manifested.[2]

During one of the episodes at the bar Harry Herzog, president and an owner of Los Robles came in, grabbed and kissed Pattie. Both Schmitt and Harris observed the bartenders giving assistance to the two girls (and to the "Betty" described in footnote 2) in arranging motel rooms where they could take their customers. Room keys were handed out and replaced in a cigar box at the bar. Solicitude was expressed by the bartenders to the returning patrons of the girls as to whether their services had been satisfactory. Room rental slips over the period in question in the handwriting of the two girls using various aliases are in evidence. Inferable from these slips conjunctive with the evidence described above is the fact

---

[1]Agent Schmitt testified: "At one time she approached me. I was seated at the bar, turned so as to be facing her. She came up close to me and pushed her body in between my knees and began to go through different contortions. She got me around the neck. She asked me if I would like to have a good time. At that time I answered, 'Well, maybe. That depends.' And she said 'Depends on what? . . . And I said, 'Depending on what it would cost, and where we would have to go.' She said, 'We won't have to go very far, and we will talk about the cost when we get there.'"

[2]Schmitt testified: "I asked about the action in the bar. I told him [Glenn Gard] I heard this was a place where you could have a good time if you were looking for it, and he said, 'Well, yes.' There was plenty of action around there. Most of it was after four P.M. At that time I told Glenn about Jean, and this man that had introduced me to her, and that she wanted $50.00 for a single trick after two o'clock in the morning, and Glenn laughed, and he said, 'Well, they are playing you for a sucker. The going price is $20.00.' I also told him about Pattie, and he said that both Jean and Pattie were 'pigs.' At that time I asked him if these girls lived at the motel, and Glenn said, "No, they didn't live at the motel. They just rented rooms there for tricks.'" (Thereafter the conversation switched to a girl with auburn hair, very young, named Betty, whom the bartender recommended highly, stating she would be around the bar later and he would point her out.)

that Los Robles, at least as a sideline, was being operated as a house of assignation. The climactic episode took place when Jean solicited Agent Harris in the presence of Schmitt. Harris went to a motel room with the girl. She completely disrobed, he partially, two deputy sheriffs arrived and Jean was arrested.

Agent Schmitt observed the emptying of liquor bottles which were left unbroken. John Kregleo, another special investigator for the department, testified that on March 9 he had searched behind the bar and found the unbroken empty bottles as described in the accusation (see below). Seventeen bottles were involved.

### SECTION 25601 IS NOT VOID FOR VAGUENESS

Referring to *In re Newbern*, 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116], Los Robles contends that Business and Professions Code section 25601 in its use of the words "disorderly house" is void for vagueness; that it violates substantive due process.

■ It is stated in *Tokaji* v. *State Board of Equalization* (hearing by Supreme Court denied), 20 Cal.App.2d 612, at page 614 [67 P.2d 1082] : "It is well settled that the right to possess, make or deal in intoxicating liquor is not a privilege, nor such a property right that state legislation prohibiting, restricting or regulating its manufacture, use, possession, distribution or sale violates the Fourteenth Amendment of the federal Constitution. [Citations.]"

■ It is nevertheless true that a law such as section 25601 under which penal sanctions are imposed "may not be uncertain or vague, and must fairly apprise the public of the conduct prohibited." The quoted language is from *Cooper* v. *State Board of Equalization*, 137 Cal.App.2d 672, at page 680 [290 P.2d 914]—a case involving other sections of the alcoholic beverage control provisions of the Business and Professions Code section 25657, subdivisions (a) and (b) (solicitation of drinks).

*In re Newbern, supra*, 53 Cal.2d 786, at page 792 et seq. [3 Cal.Rptr. 364, 350 P.2d 116], holds Penal Code section 647, subdivision 11 (as worded in 1960) categorizing anyone who is a "common drunk" as a vagrant to be unconstitutionally vague. As we view it, "common drunk" and "disorderly house" have no equivalence as respects certainty. The Supreme Court (per Justice White) in *In re Newbern, supra*, tests certainty as follows : "The required meaning, certainty

and lack of ambiguity may appear on the face of the questioned statute or from any demonstrably technical or common law meaning of the language in question."[3] *In re Newbern* (on p. 793) points out that the adjective "common" has fourteen dictionary definitions widely varying and that case law has given "Almost as many definitions of a common drunk . . . [as being] judicially accepted as there are courts to formulate them." ■■ We see no similar indefiniteness in "disorderly house." Its meaning is specific both in common parlance and in common law. We select from 12A Words and Phrases (Supp. 1966) pages 45-46, the definition taken from *Curley* v. *State*, 215 Md. 382 [137 A.2d 640, 644], "A house is 'disorderly' if kept as a place where acts prohibited by statute are habitually indulged in or permitted," and that taken from *Payne* v. *United States* (D.C.Mun.App.) 171 A.2d 509, 511, " '[D]isorderly house' is one where acts are performed which tend to corrupt morals of the community or promote breaches of peace." (See also 16 Cal.Jur.2d 249; 24 Am.Jur. 2d 81, "Disorderly Houses.") ■■ But we need not rest our decision on the sufficiency of clarity of "disorderly house" standing alone. It does not stand alone in section 25601. Los Robles refers to "disorderly house" out of context. The section in material part reads: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, . . . for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor." There is no uncertainty in that definition. The section being clear, there can be no doubt of its constitutionality as a valid exercise of the state's police power. The language of the section is not materially different from Penal Code section 316 relating to the keeping of "any disorderly house." The constitutionality of that section was upheld in an early decision of this court in *People* v. *Barbiere,* 33 Cal.App.

---

[3]Perhaps the test applied in the opinion of the Second District Court of Appeal (per Justice Kaus) in *In re Davis,* 242 Cal.App.2d 645, at page 650 [51 Cal.Rptr. 702], taken from *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 46 S.Ct. 126], is more explicit. It says the statute " 'must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' "

770, 775 [166 P. 812]. We have referred above to *Cooper* v. *State Board of Equalization*, 137 Cal.App.2d 672 [290 P.2d 914], where, as stated, the question of the certainty of the sections prohibiting the soliciting of customers to buy drinks in licensed premises (Bus. & Prof. Code, § 25657, subds. (a) and (b), was involved). Justice Peters, in holding those sections met the test of certainty, states (on p. 680) : "The courts have had no difficulty in ascertaining what these statutes prohibit. [Citations.]" We experience no difficulty here. We hold that section 25601 is neither void for vagueness nor violative of due process but is, on the contrary, a valid exercise of the state's police power.

Los Robles' other contentions may be summarily disposed of.

### Re the Sufficiency of the Accusation

■ The accusation is in two counts. The first relates to the charge hereinabove discussed : permitting the motel to be used as a disorderly house. It sets forth the date, place, name of the female solicitor, name of the solicitee, and the fact of solicitation "for an act of prostitution," of each seven separate occurrences. Count II, relating to the keeping of unbroken bottles, gives the date, number of bottles, size, brand and type of liquor, of each of the 17 bottles involved.

Los Robles' attack is leveled at the first count. It is contended that there "is not a single, solitary factual allegation." To the contrary, the department could not have been more explicit without having included a transcript of the actual language used by the girls in their acts of solicitation. The accused was given fair notice. The ultimate facts alleged were more than adequate to permit Los Robles to prepare its defense. (*Stoumen* v. *Munro*, 219 Cal.App.2d 302, 306-307 [33 Cal.Rptr. 305].)

### Re the Sufficiency of the Evidence

■ Special investigators Schmitt and Harris testified in detail to all of the facts summarized above. If believed by the trier of fact, their testimony proves conclusively the charges of the accusation. The Department of Alcoholic Beverage Control and the Alcoholic Beverage Control Appeals Board are constitutional agencies. (Cal. Const., art. XX, § 22.) In reviewing a decision by the department all three reviewing tribunals here involved, the appeals board, the superior court, and this court were and are bound by the same rule. ■ We determine

only whether the decision was supported by substantial evidence " 'as generally applied in judicial proceedings in this state.' " (*Harris* v. *Alcoholic Beverage Control Appeals Board*, 212 Cal.App.2d 106, 111-112 [28 Cal.Rptr. 74].) Here substantial evidence, beyond doubt, supports the decision.

### Re the Contention Inadmissible Hearsay Was Admitted.

■ Los Robles argues in this regard that the testimony of the agents of the department regarding their conversations with the girls, Pattie and Jean, was inadmissible "administrative" hearsay. It was not inadmissible upon any theory. Although admitted in an administrative hearing, it would have been equally admissible under common law rules. Solicitation for prostitution was the very fact in issue. The truth of the girls' statements was not important. The fact they were made was. The declarations were admissible as original evidence. They were "operative facts." (See Witkin, Cal. Evidence (2d ed. 1958) p. 425 et seq.; *People* v. *Contreras*, 201 Cal.App.2d 854, 857 [20 Cal.Rptr. 551]; *Greenblatt* v. *Munro*, 161 Cal.App.2d 596, 601-602 [326 P.2d 929]; *People* v. *Gaspard*, 177 Cal.App.2d 487, 489 [2 Cal.Rptr. 193].) ■ The evidence was admissible upon another ground. The solicitations were made in the presence of one or another of Los Robles' bartenders by whose acts Los Robles is bound. (*Ballesteros* v. *Alcoholic Beverage etc. Appeals Board*, 234 Cal. App.2d 694 [44 Cal.Rptr. 633].) Such declarations of the girls in the presence and within the observation of these bartenders who, as noted above, indicated their knowledge that such solicitation was going on was admissible under Code of Civil Procedure, section 1870, subdivision 3.[4] (It may also be stated parenthetically that the new Evidence Code, effective January 1, 1967, has not changed these rules.) Section 1200, subdivision (a), of the Evidence Code defines hearsay and expressly states that evidence is only within the hearsay rule which "is offered to prove the truth of the matter stated." Thus, the evidence here is not an exception to the hearsay rule; it is not within it. (See Witkin, Cal. Evidence

---

[4]Section 1870, Code of Civil Procedure, reads in part as follows: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts:

"  .  .  .  .  .  .  .  .  .  .  .  .  .

"3. An act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto: . . . . ''

(2d ed. 1958) p. 418.) Section 1221 states that a statement is not made inadmissible by the hearsay rule ''if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption of his belief in its truth.''

### RE THE CLAIMED DISCRIMINATION AGAINST THIS LICENSEE.

Los Robles states without supporting evidence that another establishment nearby, guilty of the same offense, received a lesser penalty. We find nothing in the record regarding the offense of the latter motel. However, we could not test the claim of abuse of discretion here by that case even had evidence therein been proffered. (*Coleman* v. *Harris*, 218 Cal. App.2d 401, 404 [32 Cal.Rptr. 486].) Our observation on this record is that Los Robles was fortunate in the leniency of the penalty (90-day suspension of its license).

### RE THE CHARGE OF ENTRAPMENT.

The availability of the defense of entrapment depends upon whether or not the intent to commit the offense originates in the mind of the accused or of the officer alleged to have done the entrapping. (*People* v. *Benford*, 53 Cal.2d 1, 10 [345 P.2d 928].) On the record before us the only possible claim of ''entrapment'' by the department agents rests upon the fact they were males sitting in the bar at Los Robles, feignedly willing to be customers of the soliciting prostitutes. That was not entrapment in any legal sense. Assuming, without deciding, that entrapment is available as a defense in proceedings under the Alcoholic Beverage Control Act (cf. *Harris* v. *Alcoholic Beverage etc. Appeals Board*, 197 Cal.App.2d 182, 186 [17 Cal.Rptr. 167]), the originating intent here was in Pattie and Jean, with agile assists by Los Robles' bartenders.

The writ of supersedeas heretofore issued by this court is vacated.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 28, 1966.