[Civ. No. 17193.   First Dist., Div. One.   Mar. 19, 1957.]

ANN KIRCHHUBEL et al., Appellants, v. RUSSELL S. MUNRO, as Director of the Department of Alcoholic Beverage Control, etc., Respondent.

John J. Fahey, Jr., and Herbert Chamberlin for Appellants.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondent.

BRAY, J.—Appellants, owners of an on-sale liquor license at "Hilltop Lodge," Daly City, were accused by the Department of Alcoholic Beverage Control of violating sections 25601 (keeping a disorderly house) and 24200.5 (knowingly permitting illegal sale of narcotics), Business and Professions Code. At the hearing of the charges, the hearing officer found appellants guilty of both charges. The Alcoholic Beverage Control Appeals Board held the evidence insufficient to support the finding under section 25601, but sufficient under section 24200.5 and as mandatorily required by that section revoked the license. On a review by the superior court, under petition for writ of mandate of the proceedings before the director filed by appellants, the court found that the decision of the director was supported by substantial evidence and by the weight of the evidence and denied the petition. Appellants appeal therefrom.

### QUESTIONS PRESENTED

1. Sufficiency of evidence to support finding that appellants knowingly permitted sale of narcotics.

2. Constitutionality of presumption of knowledge in section 24200.5, subdivision (a), Business and Professions Code.

1. *Knowingly Permitting Narcotics Sales.*

There was no evidence that the proprietors were present upon the licensed premises at the time of any of the narcotic sales. Their knowledge is based upon the presumption in section 24200.5, subdivision (a): "Successive sales over any continuous period of time shall be deemed evidence of such permission."

The first question we have to determine is whether the evidence shows "successive sales" of narcotics "over any continuous period." We think it does. One Graham testified that about March or April, 1954, he began going to the Hilltop. On each of the 15 or 16 times he went there he either purchased or sold marijuana. He could not give exactly the particular dates, except that on August 5, 1954, he sold four or five marijuana cigarettes to one Acevez.* In the period March to August, Graham saw marijuana used frequently in the premises—in the bathroom, in the corner by the juke box, at the tables and at the bar. In July the sales of narcotics became rather bold. A patron called "Wido" would sell benezedrine, red devils, pink ladies, codein. On one oc-

---

*The accusation charges sales on August 5, 6, 7, 8, and 18.

casion Wido had six cans of marijuana in his possession. Graham admitted that since his teens he had been in and out of correctional institutions and had pleaded guilty to a charge of possession of narcotics.

On August 4, one Magee, an investigator for the district attorney, went to the lodge at about 10 p. m. and met Acevez. In the early hours of August 5 he purchased two marijuana cigarettes from Acevez. August 6 at approximately 10:30 p. m. he purchased four marijuana cigarettes from Wido which Wido had received from Graham. Magee returned to the lodge on August 7 but made no purchases. On August 18 he purchased three such cigarettes from an unidentified man in a booth near the men's room. He also saw other sales of marijuana made that night. During his visits to the lodge in August in addition to the above, he observed men smoking marijuana cigarettes in the corner by the juke box. In the men's room he saw three members of the lodge's band smoking such cigarettes. Court records were introduced showing that Wido had pleaded guilty to possessing and selling marijuana on August 6, and that Acevez had pleaded guilty to selling marijuana. Magee testified that those sales were made at the Hilltop Lodge. He also testified that 60 to 70 per cent of the patrons were marijuana types.

Because of the number of youths frequenting the lodge, the licensees hired an off-duty policeman to work on Friday and Saturday nights (about six hours per week), to check I.D. cards and maintain order. One of the proprietors, George Kirchhubel, testified that the day the policeman came to work, the latter said that some of the customers did not look right, "shady, or something like that . . . and might have been smoking something like that . . ." Kirchhubel told him he had a free hand to do what he wanted. Officer Van Otten of the Daly City Police Department testified that he visited Hilltop Lodge on an average of six times per week, checking juveniles as a part of his duty, and that the owners welcomed his doing so. Coleman, Kirchhubel, his colessees Mrs. Kirchhubel and Pallas, a part time bartender at the lodge, and the leader of the band, all testified that they had never seen marijuana cigarettes or narcotics on the premises or anyone smoking marijuana. The colessees, however, testified that they did not know what marijuana cigarettes looked like. This testimony merely created a conflict which was resolved by the director. ■ The decision of the director must be sustained if the evidence, although conflicting, is substantially sufficient

to support its findings. (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131 [173 P.2d 545].) All substantial conflicts must be resolved in favor of the findings of the director. (*Molina* v. *Munro*, 145 Cal.App.2d 601, 604 [302 P.2d 818].) "Neither the superior court nor this court has power to reweigh the evidence presented to the . . . board [now director] or to exercise independent judgment thereon." (*Dethlefsen* v. *State Board of Equalization*, 145 Cal.App.2d 561, 563 [303 P.2d 7].) Magee's testimony as to sales of narcotics on the 5th, 6th and 18th days of August, his evidence as to what he saw on those and other occasions, the type of people who patronized the lodge, and the testimony of Graham, plus the guilty pleas of Acevez and Wido and the other circumstances, constitute substantial evidence, which, if believed by the director (and it was), fully supported the findings that successive sales of narcotics over a continuous period occurred at the Hilltop Lodge, and that the licensees are presumed to know thereof. Even without the presumption, the evidence almost forces an inference that the things testified to by Magee and Graham could not have gone on in the lodge without some of the proprietors as well as the employees knowing thereof.

2. *Is the Presumption Provided in Section 24200.5, Subdivision (a), Unconstitutional as Applied to Appellants?*

In *Endo* v. *State Board of Equalization*, 143 Cal.App. 2d 395, 401 [300 P.2d 366], the contention was made that this statutory presumption was unconstitutional as to the licensee who claimed to have no personal knowledge of the illegal sales of narcotics in the licensed premises. We there held that it was constitutional. The only factual difference between the Endo case and ours is that there the sales were made by the bartender employed by the licensee, while here they were made by patrons. Such factual difference, under the circumstances here, in nowise affects the principle involved. As said in *People* v. *Jemnez*, 49 Cal.App.2d Supp. 739, 741 [121 P.2d 543] : "It has long been uniformly held that there is no inherent right in a citizen to engage in the business of selling alcoholic beverages [citations], and that 'The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations.' [Citation.] The governing authority may, therefore, in the exercise of the police power for the protection of the public morals, health and safety, grant the privilege of selling alcoholic beverages upon such terms and conditions as

it may determine. [Citations.] In recognition of these principles our Supreme Court has held in *Ex parte Hayes* (1893), 98 Cal. 555 [33 P. 337, 20 L.R.A. 701], that the above quoted constitutional provision (Sec. 18 of art. XX) 'does not . . . operate as a limitation upon the power of the state . . . to prescribe the conditions upon which the business of retailing intoxicating liquors shall be permitted to be carried on, or in regulating the manner in which such business shall be conducted.' " (See also *State Board of Equalization* v. *Superior Court*, 5 Cal.App.2d 374, 377 [42 P.2d 1076]; *Cooper* v. *State Board of Equalization*, 137 Cal.App.2d 672, 679 [290 P.2d 914].)

One of the conditions prescribed is that the holder of a liquor license must be vigilant to see that sales of narcotics do not take place upon his premises and that if they do take place successively and continuously he will be presumed to have known of them and to have permitted them. ■ Appellants seem to think that the employment of a policeman two nights a week (the specific sales charge occurred on nights when the policeman was not on duty), stationing him near the door, as the evidence shows he was most of the time, makes the presumption inapplicable as to them. Such action does not do so.

Petitioners contend that the presumption created by section 24200.5, subdivision (a), is dispelled as a matter of law by the testimony of the witnesses, the fact that petitioners employed Officer Coleman and encouraged inspection of juveniles by Officer Van Otten. It is interesting to note that Officer Van Otten did not testify as to the conditions he found at the lodge. Officer Coleman's duties with reference to checking I.D. cards, etc., were such that he had little time to observe the entire premises. The evidence shows that the place was patronized by a number of marijuana users (Magee testified that 65 to 70 per cent of the patrons were marijuana types), and that in spite of Coleman's statement when he first worked there that some of the customers did not look right "and might have been smoking," he made no particular effort to investigate that situation. He was there only on Friday and Saturday nights. His station was at the entrance door some 45 to 60 feet from the juke box and the entrance to the men's room at which places the marijuana smoking occurred. However, on the nights he was there, the conduct of the place was less "loose" than on nights he was not there. Graham testified that during the month of July the narcotic sales were "pretty bold" although they slowed down when I.D. checking tight-

ened up. The case is not one in which the presumption stands alone against the testimony of petitioners' witnesses (although were it so, the evidence contrary to it does not as a matter of law dispel it). The testimony of both Magee and Graham supports the presumption. ▪ Petitioners' evidence created a conflict with the presumption and the testimony of Magee and Graham. The resolving of that conflict was a matter for the Department of Alcoholic Beverage Control, whose action thereon cannot be upset by this court if there is substantial evidence to support it. (*Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 131.)

The presumption is not made conclusive but merely evidence of permission which may be overcome by a contrary showing. ▪ The Legislature has power to provide for such a presumption if there is a natural and rational evidentiary relation between the facts proved and those presumed. Having in mind that the power to regulate the liquor business is a very broad one, there is a natural and rational evidentiary relation between a showing that there have been successive sales of narcotics over a continuous period on licensed premises and the very natural conclusion that the sales could not have continued without the implied or express consent of the licensee. ▪ Moreover, a licensee holds his liquor license with the knowledge that he must effectively police his premises against successive sales of narcotics thereon, not only by his employees but by his patrons as well. This does not mean, as claimed by petitioners it would mean, that an occasional sale by a patron, which sale was unknown to the licensee or his employee, would jeopardize the license, but sales which, as the section requires, are successive and over a continuous period of time. Such a situation cannot occur if the licensee is vigilant in protecting his license and is at least as interested in protecting the public welfare and morals as he is in making money.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 15, 1957.