[Civ. No. 22397. Second Dist., Div. One. Sept. 18, 1957.]

SCHAUB'S INC. (a Corporation), Appellant, v. DEPART-MENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

Fred N. Howser and Paul Angelillo for Appellant.

Edmund G. Brown, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondents.

WHITE, P. J.—This cause is before us by reason of an appeal from a judgment denying appellant's petition for a peremptory writ of mandate to compel respondent Russell S. Munro, Director of respondent Department of Alcoholic Beverage Control (hereinafter referred to as "Department"), to annul and set aside the department's decision denying appellant's application for the transfer of an "off-sale" retail general liquor license, owned by appellant corporation for many years prior thereto, and which it was sought to transfer to a super food market located at 9956 East Las Tunas Drive, Temple City, in Los Angeles County. The Church of the Nazarene filed a protest to the granting of appellant's application on the ground that the church premises were directly across the street from the latter's property, and that transfer of the liquor license to these previously unlicensed premises would not be conducive to public welfare and morals.

An investigation was made by the District Liquor Control Administrator who filed a written report with the department recommending denial of appellant's application upon the stated ground that the "premises are located within the immediate vicinity of a church." Thereupon, the department made its order denying the application. Thereafter, upon request of appellant, the department referred the former's application to a hearing officer upon the issue of whether "the premises are located within the immediate vicinity of a church." At such hearing where appellant appeared through its president and was represented by counsel, evidence was received on behalf of appellant and the protestant and the proceedings were taken down by a reporter. At the conclusion of the said hearing the hearing officer made the following proposed decision: "Under existing conditions, the premises for which license is sought are not in such proximity to churches that license would adversely affect the activities of the churches or be contrary to public welfare and morals." The recommendation of the hearing officer to the department was that the protest be overruled and that the license be issued. The department thereupon notified appellant and the protestant that it had considered but not adopted the foregoing proposed decision of the hearing officer, but would decide the case itself pursuant to the provisions of section 11517, subdivision (c) of the Government Code. In accordance with the provisions of this section, the department then reviewed the record, including the transcript of the aforesaid hearing, and pursuant to the cited code section, rendered its own decision

in which it found that the premises for which the application was filed were located in the immediate vicinity of a church, and in which it determined that by reason of the proximity of the church to the premises the issuance of the liquor license would be contrary to public welfare and morals.

Appellant then filed with respondent Alcoholic Beverage Control Appeals Board (hereinafter referred to as "Appeals Board"), an appeal from the decision of the department. The appeals board heard oral argument, considered the matter and rendered its decision affirming the decision of the department.

Appellant petitioned the superior court for a writ of mandate commanding the department to annul and set aside its decision and commanding the appeals board to annul and set aside its decision. The department, the appeals board and Russell S. Munro, as Director of the department, filed a return by way of answer to the petition, to which appellant filed a replication.

The matter was heard by said superior court which considered the entire administrative board record. Findings were duly made, and based thereon, the court filed its conclusions of law reading in part as follows: "That in the administrative proceedings below the petitioner was accorded a fair hearing and there was no abuse of discretion by the Department; that the findings of fact of the hearing officer were supported by the substantial evidence in the light of the whole record; that the decision of the Department was supported by the findings of fact; that the Appeals Board correctly considered all of the issues in the case and correctly affirmed the decision of the Department; that there was and is no reason to set aside the determination of the Department or to set aside the decision of the Appeals Board, but on the contrary said determination and said decision should be sustained; that a peremptory writ of mandate should be denied; that the alternative writ of mandate heretofore issued, should be discharged." Judgment was accordingly entered from which this appeal is prosecuted.

Concerning the factual background surrounding this controversy the record reflects that appellant's premises consists of a super market in a one-story building 160 feet by 120 feet, with the usual departments, and is located on the corner of North Rowland Avenue and East Las Tunas Drive, in Temple City, with a large parking area in the rear. The protesting Church of the Nazarene is located directly across Las Tunas Drive from appellant's premises, at a distance of 100 feet.

The church is set back from the street about 50 feet, and the proposed beverage department in the rear of the market, near the parking area, would be located about 250 feet from the church. The First Baptist Church of Temple City is 500 feet airline and 700 feet walking distance from appellant's premises. There are no other premises with liquor licenses within 1,000 feet of the area in question.

The protesting church is used not only on Sundays but also during the weekdays. Regular services are conducted on Sunday morning, Sunday evening and Wednesday evening. The Sunday church attendance, including Sunday School and Young People's Meeting, averages between 200 and 400 persons. Youth meetings are usually held at the church on Friday and Saturday evenings, with the average age of those attending being between 12 and 20 years. Some church organizations meet at the church during the day hours. The main entrance to the church both for those arriving by automobile and those walking, is on Las Tunas Drive, across from appellant's premises.

The president of appellant corporation testified at the hearing that the land in question was purchased in 1941 and the building thereon was erected in 1950. That he had owned the particular license requested to be transferred since 1938, and that when the protesting church was seeking a zoning variance so that they could build, he signed the petition on the promise of the pastor that they would not object to a license for the store he planned, but he did not get it in writing, and the pastor was transferred.

The record reveals that a previous application by appellant for transfer of a liquor license to the premises herein was denied by the State Board of Equalization in 1952 upon the grounds that the premises were located in proximity to two churches. There is, however, evidence that since such denial of appellant's application, the business area in the vicinity here involved has been developing very rapidly, with several new businesses being established therein. There was uncontradicted evidence that the area including Las Tunas Boulevard has experienced a rapid commercial development, the character of the area being more intensively business and commercial as many more commercial enterprises have been established. The adjoining street along the east side of this property is to be widened to a one hundred foot boulevard as a freeway feeder for the Ramona (San Bernardino) Freeway; 20,000 automobiles a day go by appellant's store on

Las Tunas Boulevard. The market represents a capital investment of $750,000 and in the previous year did $2,800,000 in business.

Photographs of the interior of applicant's premises show an extensive and modern installation. The president of appellant corporation testified that he would not place any exterior signs advertising liquor on the premises, and that in their experience beverages purchased in a super food market are usually to be taken home rather than consumed nearby. Photographs were received in evidence showing numerous other markets with licenses near churches which said licenses were issued *after* the establishment of the church; that there is no distinguishing feature in the conduct of these churches near these licensees and that of the Church of the Nazarene and the property of appellant. It is conceded that the officers of appellant corporation are of good moral character.

Reverend R. N. Gunstream, Pastor of the protesting Church of the Nazarene, was interrogated at the hearing by counsel for the department in part as follows:

"Q. Now, the issue of the protest is the immediate vicinity of the church. What do you have to tell us about that?

"A. My protest would be first of all on the basis that I am the pastor of the church and in the second place because I am against liquor in any form, and in the third place because it is in close proximity to the church. This license in this market I feel would not be good for the moral of the area nor to the functions of the church ... I will say there are churches who don't take the same kind of a stand as we do in regard to liquor but as far as the Nazarene, our stand is total abstinence. We are against any form of liquor whether it's taken home or taken across the counter. We base our protest as total abstainers. . . . But since we are in the church we are and take the stand we do, we are totally against having liquor in any form across the street." The views of the Reverend Pastor were concurred in by several parishioners of the protesting church who also testified at the hearing.

█ Appellant's first contention that the department is without authority to set aside a proposed decision by the hearing officer that the premises for which the license is sought are not in such proximity to churches as to adversely affect the activities of the churches or contrary to public welfare and morals, when no additional evidence is presented at the subsequent hearing before the department other than that which was before the hearing officer would seem to be answered

in the negative by the provisions of section 11517 of the Government Code, pursuant to which the department acted in the instant case. Subdivision (c) of the section just cited provides that if the proposed decision of the hearing officer is not adopted by the department as provided in subdivision (b) each party shall be furnished with a copy of the proposed decision, whereupon, "The agency (in this case the department) itself may decide the case upon the record, including the transcript, *with or without taking additional evidence,* or may refer the case to the same or another hearing officer to take additional evidence." then, "The agency itself shall decide no case provided for in this subdivision without affording the parties the ·opportunity to present either oral or written argument before the agency itself." (Emphasis added.)

The foregoing Government Code provisions were strictly followed in the case at bar wherein the department, after complying with the procedural provisions of the code section, decided the case, as they had a right to do, upon the record including the transcript, and "without taking additional evidence."

A more serious question is presented by appellant's next contention that the decision here under attack, holding that by reason of the proximity of appellant's premises to a church, the granting of an "off-sale" liquor license would be contrary to public welfare and morals finds no adequate evidentiary support in the record and constituted an abuse of discretion. ■ From a review of the authorities it seems fair to say that the decisions of the department are final, except that they are subject to review for excess of jurisdiction, errors of law, *abuse of discretion,* and *insufficiency of evidence* (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 132 [173 P.2d 545]). ■ When as here, the jurisdiction of the department to grant or refuse the transfer of a license depends upon the establishment of an ultimate fact (that the public welfare and morals would be adversely affected by an "off-sale" liquor license because of its proximity to a church), the reviewing court may examine the evidence upon which the finding of the department to that effect is based, and if the findings of the department are contrary to the evidence, read as a whole, or without meritorious support in the evidence, the findings of the department, like those of a trial court, may be set aside and the decision based thereon may be set aside (*Southern Pac. Co.* v. *Railroad Com.,* 13 Cal.2d 125, 127, 128 [87 P.2d 1052]; *West* v. *Industrial Acc. Com.,* 79 Cal.App.2d 711, 719, 720

[180 P.2d 972]). In other words, the question here presented is, were the findings and decision of the department supported by substantial evidence in the light of the whole record?

The department was created at the general election in November, 1954 by the amendment of section 22, Article XX of the California Constitution and since January 1, 1955, as successor to the State Board of Equalization in the field of alcoholic beverages, has been the governmental agency charged with the issuance and denial of liquor licenses and the disciplining of liquor licensees.

Section 22 of Article XX of the Constitution of California provides in the fifth paragraph thereof:

"The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific liquor license *if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . ."* (Emphasis added.)

 While the department is vested with the constitutional power to deny in its discretion any specific liquor license if it determines *for good cause* that granting the license would be contrary to public welfare and morals, in so determining, the department performs a quasi-judicial function similar to local administrative agencies. (*Covert* v. *State Board of Equalization, supra,* p. 131.) But, "The board's discretion under section 22, however, is not absolute but must be exercised in accordance with the law, and the provision that it may revoke a license *'for good cause'* necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals" (*Stoumen* v. *Reilly,* 37 Cal. 2d 713, 717 [234 P.2d 969]). (Emphasis added.) (See also *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 775 [256 P.2d 1].) The same rules apply to the determination of an application for a license as those for the revocation of a license (*Weiss* v. *State Board of Equalization, supra,* p. 775.)

A review of the record herein leads inevitably to the conclusion that the question for determination is whether, under the facts of this case, as herein narrated, the department acted

arbitrarily and abused the discretion vested in it by deciding under these facts, that the location of the license applied for was against public welfare and morals because of the fact that a protesting church was located directly across the street from the premises sought to be licensed?

In summarizing the more or less plenary powers of the department, Mr. Justice Pro Tempore Vickers, speaking for the court in the case of *Altadena Community Church* v. *State Board of Equalization,* 109 Cal.App.2d 99, 106 [240 P.2d 322], said:

"The people in their wisdom have given appellant board the exclusive power to determine under what circumstances it is or is not contrary to public welfare and morals to issue a liquor license. Such a determination is frequently a difficult one and not subject to hard and fast rules. The presence of churches in the vicinity of the premises in question is not in itself necessarily determinative. Different conclusions may properly be reached at different times or under different circumstances. The board is wisely left free to act upon each application for a license as it comes before it."

On many occasions the courts have attempted to define "abuse of discretion." In *Sharon* v. *Sharon,* 75 Cal. 1, 48 [16 P. 345], the court had this to say: "In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered." Bouvier's Law Dictionary, Volume I, page 94, defines "abuse of discretion" as "A discretion exercised to an end or purpose not justified by and clearly against reason and evidence." Under either of the above, or any other definition with which our research has been rewarded, can it be said, as a matter of law, that under the facts and circumstances here present, the department abused its discretion in denying appellant's application for an "off-sale" liquor license? We think not.

First of all, we are confronted with the rule announced in *Crowley* v. *Christensen,* 137 U.S. 86 [11 S.Ct. 13, 34 L.Ed. 620], quoted with approval in *Ritz* v. *Lightston,* 10 Cal.App. 685, 688 [103 P. 363], and which reads:

". . . There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the

governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only.''

It is pertinent to observe that while the department may refuse an ''on-sale'' license if the premises are in the immediate vicinity of a church (Bus. & Prof. Code, § 23789), there is no such provision or regulation by the department as to ''off-sale'' licenses, nevertheless we are satisfied that proximity of the licensed premises to a church may supply an adequate basis for denial of an ''off-sale'' license as being inimical to public morals and welfare because, ''while there may not be as much probability that an off-sale license in such a place would be as detrimental as an on-sale license, yet we believe a reasonable person could conclude that the sale of any liquor on such premises would adversely affect the public welfare and morals'' (*Weiss* v. *State Board of Equalization, supra,* p. 776.).

We are impressed that because of the peculiar problems presented by traffic in liquor, there can be no question but that it is subject to regulation by the state in the exercise of its police powers. It therefore follows that regulations by way of exceptions in respect to churches and schools should be liberally construed in favor of such regulations and against applicants for license to sell liquor within prescribed areas. Appellant relies heavily upon the case of *Altadena Community Church* v. *State Board of Equalization, supra,* but we think the cited case tends more to support respondents herein than appellant. In that case, the application for a license was opposed by three churches located some 235, 300, and 50 feet from the restaurant premises upon which the license was sought. More than 500 citizens of the area signed petitions of protest, and the sheriff of Los Angeles County likewise filed a protest. After an extensive hearing before the hearing officer of respondent board, at the conclusion of which he recommended denial of the application in the following language: ''Premises are in the immediate vicinity of three churches and a Youth Center. Issuance of license would be contrary to public welfare and morals. Penalty or Recommendation: That protests be sustained.'' (P. 102.) When the matter came before the Board of Equalization, findings were made that the applicant's premises had been operating under a liquor license in a completely business district for almost 11 years prior to the hearing and that virtually all of the protesting churches

had moved into the area after the premises were originally licensed for the sale of beer and wine. Respondent board concluded, ". . . that because of the facts as found aforesaid it would not be contrary to public welfare and morals to issue an on-sale general license to the applicant . . ." and ordered that the license issue. The superior court directed the issuance of a peremptory writ of mandate ordering the board to deny the application, declaring that the granting of the application was an abuse of discretion because of the proximity of three churches and a Youth Center to the premises in question. On appeal, the judgment of the trial court was reversed, the reviewing court stating at page 103, "It had been definitely established that the power of a court is very limited in reviewing the decisions of the board. In the case of *Covert* v. *State Board of Equalization,* 29 Cal.2d 125 at page 131 [173 P.2d 545], the Supreme Court said: '. . . (The board) has specifically been given quasi judicial, or adjudicating power, that is, the right to make determinations of fact which are not subject to reexamination in a trial de novo in the superior court.' At page 132 the court said: 'It would appear, therefore, from the foregoing authorities, that the decisions of the board are final, subject to review for excess of jurisdiction, errors of law, abuse of discretion and insufficiency of the evidence, and that where there is error the matter ordinarily should be remanded to the board for further proceedings.' In the case of *Hansen* v. *State Board of Equalization,* 43 Cal.App. 2d 176 at page 180 [110 P.2d 453], the court said: 'The constitutional provisions mentioned above are designed to give the Board broad discretionary powers in the matter of granting or refusing to grant licenses of this character. Whether or not "good cause" for the denial of the license existed, was a matter for determination by the Board, and not by the courts.' "

The Altadena church case presented a factual situation quite different from the one confronting us since the protesting churches in that case moved into a business district wherein a licensed premises had been operating for over 10 years and apparently the licensing board concluded that they could not justly complain that the welfare and morals of their parishioners would be in jeopardy, since they must take the neighborhood as they find it. On the contrary, in the case now engaging our attention, the protesting church was first upon the scene and was already an established place of worship before the present license was applied for.

From a careful consideration of the cases of *Weiss* v. *State Board of Equalization, supra; Covert* v. *State Board of Equalization, supra; Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137 [173 P.2d 551, 174 P.2d 4] ; *Stoumen* v. *Reilly, supra; Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176 [110 P.2d 453] ; *Altadena Community Church* v. *State Board of Equalization, supra; Griswold* v. *Department of Alcoholic Beverage Control,* 141 Cal.App.2d 807 [297 P.2d 762], we cannot say that as a matter of law under the facts of this case, the discretion vested in respondent department was exercised "to an end or purpose not justified by and clearly against reason and evidence." (Bouvier's Law Dictionary, *supra.*)

■ Appellant also urges that when the protesting church was seeking a zoning variance so that its edifice could be constructed the president of appellant corporation signed the petition to grant said zoning variance on the promise of the then pastor of the church that the church would not object to a license for the store appellant corporation planned, but "he did not get it in writing and the Pastor was later transferred."

Such an agreement however, does not aid appellant because it would be without legal significance and violative of public policy. Our state Constitution has designated the department as the agency charged with the duty of investigating applications for liquor licenses. Such investigations must be made with a view to the protection of public welfare and morals, and with that objective in mind the department must determine for itself whether an application for a particular liquor license should be granted or denied. While the department was entitled to give consideration to the aforesaid claimed agreement, it was not binding upon the department in arriving at its decision. The general powers of the department over the rights of those desiring to engage in or engaged in the sale of liquor was thus stated in the recent case of *Kirchhubel* v. *Munro,* 149 Cal.App.2d 243, 247-248 [308 P.2d 432] :

". . . As said in *People* v. *Jamnez,* 49 Cal.App.2d Supp. 739, 741 [121 P.2d 543] : 'It has long been uniformly held that there is no inherent right in a citizen to engage in the business of selling alcoholic beverages (citations), and that "The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations." (Citation.) The governing authority may, therefore, in the exercise of the police power

for the protection of the public morals, health and safety, grant the privilege of selling alcoholic beverages upon such terms and conditions as it may determine. (Citations.) In recognition of these principles our Supreme Court has held in *Ex parte Hayes* (1893), 98 Cal. 555 [33 P. 337, 20 L.R.A. 701], that the above quoted constitutional provision (art. XX, § 18) "does not . . . operate as a limitation upon the power of the state . . . to prescribe the conditions upon which the business of retailing intoxicating liquors shall be permitted to be carried on, or in regulating the manner in which such business shall be conducted." ' (See also *State Board of Equalization* v. *Superior Court*, 5 Cal.App.2d 374, 377 [42 P. 2d 1076]; *Cooper* v. *State Board of Equalization*, 137 Cal.App. 2d 672, 679 [290 P.2d 914].)"

For the foregoing reasons, the judgment is affirmed.

Fourt, J., and Drapeau, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 13, 1957.

*Assigned by Chairman of Judicial Council.