[Civ. No. 23483. Second Dist., Div. Two. Apr. 13, 1959.]

HARRY E. SIBERT, Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

Norman D. Rose, and Dorothy Kendall for Appellant.

Stanley Mosk, Attorney General, Edward M. Belasco and Warren H. Deering, Deputy Attorneys General, for Respondents.

FOX, P. J.—Petitioner appeals from a judgment of the superior court which denied his petition for a peremptory writ of mandate and quashed an alternative writ previously issued.

Petitioner was the holder of an on-sale beer license issued by the Department of Alcoholic Beverage Control.[1] On or about January 29, 1957, an accusation under the Alcoholic Beverage Control Act was issued against petitioner charging, among other things, that he permitted his wife to work in and upon the licensed premises intermittently from January 11, 1957, to January 29, 1957, in violation of the Department's rule 57 (Cal. Admin. Code, tit. 4, ch. 1, § 57),[2] in that his wife had not been fingerprinted as required by the above rule. A hearing was had on the accusation before a hearing officer of the Department who, at the termination thereof, filed his findings of fact and a proposed decision. This proposed decision was adopted by the Department and a 15-day suspension levied against petitioner. Petitioner stipulated to the truth of the facts giving rise to this aspect of the accusation. Thereafter, the Board affirmed the above decision.

Petitioner thereafter filed a petition in the superior court for a writ of mandate to compel respondents to set aside their decree. An alternative writ was issued which was subsequently quashed and the peremptory writ denied. It is from this judgment that petitioner appeals.

It is petitioner's contention that rule 57 violates the following constitutional provisions:

(1) the equal protection clause of the Constitution of the United States (U.S. Const., Amend. XIV, § 1) and of the State of California (Cal.Const., art. I, § 11), and (2) the due process clause of the Constitution of the United States (U.S. Const., Amend. XIV, § 1) and of the State of California (Cal.Const., art. I, § 13).

---

[1] For convenience, respondents will be referred to as Department (Department of Alcoholic Beverage Control) and Board (Alcoholic Beverage Control Appeals Board).

[2] Since the filing of the accusation in this case, rule 57 has been amended. However, reference in this opinion is to the version in effect at the time of the filing of the accusation.

In 1957 rule 57 provided:

"Every licensee and the managing officers of every corporate licensee shall have their fingerprints taken by the board, if they have not heretofore been so fingerprinted.

"Every person who applies for a license and the managing officers of a corporate applicant shall have their fingerprints taken by the board at the time of filing an application for a license. The husband or wife of a licensee or of an applicant for a license shall have his or her fingerprints taken by the board, if such spouse works or is to work on or in the licensed premises or is engaged or is to be engaged to work in any way in the operation of the licensed business."

With respect to the equal protection argument petitioner does not dispute the Department's right to require that licensees or applicants be fingerprinted, nor does he suggest any barrier to a requirement that the spouse of a licensee or applicant be fingerprinted. However, he does argue that the classification established in rule 57 is unreasonable, arbitrary and capricious in that it singles out a class of employees (only those who occupy the status of a spouse of a licensee or an applicant) to be fingerprinted and there is no rational basis upon which to justify distinguishing between employees.

■ There can be no question that because of the particular problems presented by traffic in liquor that it is subject to regulation by the state in the exercise of its police power. (*Schaub's, Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 858, 867 [315 P.2d 459].) ■ Furthermore, " ' . . . there is no inherent right in a citizen to engage in the business of selling alcoholic beverages . . . [and] the governing authority may, therefore, in the exercise of the police power for the protection of the public morals, health and safety, grant the privilege of selling alcoholic beverages upon such terms and conditions as it may determine.' " (*Kirchhubel* v. *Munro,* 149 Cal.App.2d 243, 247-248 [308 P.2d 432].) ■ A classification made for the purpose of regulation will be upheld unless it is without any reasonable basis and the party attacking such classification has the burden of demonstrating the arbitrariness thereof. As stated in *Ferrante* v. *Fish & Game Commission,* 29 Cal.2d 365, 371-372 [175 P.2d 222], quoting from *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78-79 [31 S.Ct. 337, 55 L.Ed. 369] : " ' . . . 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of dis-

crétion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' "

■ "In order to constitute the uniformity of operation specified in the constitution [Cal. Const., art. I, § 11], it is not necessary that the general law must operate alike upon all the subjects or persons to which it applies, independent of all other considerations, but that it shall operate uniformly upon all persons standing in the same category, and upon rights and things in the same relation." (*People* v. *Henshaw,* 76 Cal. 436, 442 [18 P. 413].) ■ "The Legislature can make reasonable classifications; i.e., classifications which have a substantial relation to a legitimate object to be accomplished. (Citations.) A law is general and uniform and affords equal protection in its operation when it applies equally to all persons within such a classification. (Citation.)" (*Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].) ■ "The constitution does not prohibit legislative classification. '[T]he mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition.' " (*Armenta* v. *Churchill,* 42 Cal.2d 448, 453 [267 P.2d 303].) ■ Furthermore, as stated in the *Lowery* case, *supra,* at page 232, quoting from *Miller* v. *Wilson,* 236 U.S. 373, 382-384 [35 S.Ct. 342, 59 L.Ed. 628, L.R.A. 1915F 829]: " 'The legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. . . . [T]he legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the legislature may be guided by experience. [Citation.] It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' "

The following cases are illustrative of situations where classifications in the alcoholic beverage area have been upheld: *Ex parte Hayes*, 98 Cal. 555 [33 P. 337, 20 L.R.A. 701] (no license to be issued where females are permitted to wait or attend in any manner on any person); *Mercurio* v. *Department of Alcoholic Beverage Control*, 144 Cal.App.2d 626 [301 P.2d 474] (female employees on premises holding on-sale liquor license may not solicit or accept alcoholic drinks from patrons); *People* v. *Jemnez*, 49 Cal.App.2d Supp. 739 [121 P.2d 543] (female prohibited from mixing drinks at an on-sale licensee's premises unless she was the licensee or the wife of the licensee of the premises); *Tokaji* v. *State Board of Equalization*, 20 Cal.App.2d 612 [67 P.2d 1082] (on-sale distilled spirits license only issuable to citizens).

█ Rule 57 was designed to aid the Department in making its investigations of applicants and to verify the truth of statements made pursuant to section 23952, Business and Professions Code, as to whether the applicant has been convicted of a felony or of having violated the liquor laws. The information obtained by virtue of the fingerprinting may well be utilized to protect the people of this state from having in this area of business activity those undesirable persons who, because of criminal records or the like, could present a serious danger to the public health, safety, welfare and morals.

With respect to the spouse of a licensee or applicant who works on the licensed premises, such spouse occupies a position entirely distinguishable from that of an ordinary employee or of a spouse who does not participate in any way in the operation of the licensed premises. It is obvious that a licensee's spouse who works on the licensed premises occupies a position or has a status strikingly similar to that of the licensee himself. (*People* v. *Jemnez*, *supra*.) Upon the absence of the licensee, the spouse oftentimes would be in sole control of the premises and the same rationale for requiring the fingerprinting of the licensee would be applicable. This, of course, would not be the case if the spouse were in no way engaged in the operation of the licensed premises or when dealing with ordinary employees. In *People* v. *Jemnez*, *supra*, the court stated, at pages 742-743: "As to the wife of a licensee, she is more nearly in the position of the licensee than that of an employee and her presence may fairly be considered to be a restraint upon impropriety. A mere employee would not have the same incentive to prevent improprieties that either a licensee or the wife of a licensee would naturally

have.'' Applying the reasoning of the above case to the instant problem, a spouse of a licensee who works on the premises, due to her (his) relationship with the licensee, would pose a more serious threat to the public, if such spouse were of undesirable character, than an ordinary employee or a spouse not working on the premises.

It is our opinion that the rule "under view does not proceed on a mere arbitrary distinction, but on one founded in intrinsic differences which naturally suggest the propriety of different adjustments of the law. . . .'' (*Vail* v. *San Diego County*, 126 Cal. 35, 38 [58 P. 392].)

As to petitioner's due process argument, it is his contention that rule 57 is vague and uncertain in that it does not sufficiently apprise an individual subject to its provisions of the precise time when the spouse must be fingerprinted.

The provisions of rule 57 are not difficult to understand if it is borne in mind that it was promulgated to cover situations that existed when it became effective and also other situations that thereafter arose. The provision that a spouse of a licensee shall have his or her fingerprints taken by the Department "if such spouse works . . . on or in the licensed premises . . .'' obviously applies to the situation where such spouse was there employed when the rule went into effect. The further provision of the rule that the spouse of a licensee shall have his or her fingerprints taken by the Department "if such spouse . . . is to work on or in the licensed premises . . . or is to be engaged to work in any way in the operation of the licensed business'' applies to situations that have arisen since the rule became effective and simply means that if such a spouse either is to work on the licensed premises or engage in the operation of the business such person "shall have his or her fingerprints taken by the Board.'' This is a condition of the licensee's right to have the spouse so engaged. Thus the Board has a consistent policy-pattern by means of which it may identify and investigate the character and background of those persons who, by reason of marital ties, have an interest in and participate in the operation of the licensed premises.

As rule 57 was in force when the facts of the instant case arose, we are only concerned with the second situation. Specifically, is the phrase "is to work on or in the licensed premises . . . or is to be engaged to work in any way in the operation of the licensed business'' so vague as to when the fingerprints are to be taken "that men of common intelligence must necessarily guess at its meaning and differ as to its

application?'' (*Wotton* v. *Bush,* 41 Cal.2d 460, 464 [261 P.2d 256].) This must be answered in the negative.

The above phrase, when read in conjunction with the purpose of the fingerprint requirement and the general scheme of rule 57, clearly sets forth a requirement that the spouse's fingerprints be taken sometime prior to the time she actually begins work. The very language employed yields of no other reasonable construction. Precisely how much time in advance of commencing work the fingerprints are to be taken is immaterial. The Department, by establishing the classification previously discussed, voiced concern over a potential danger to the public health, safety, welfare and morals when the spouse of a licensee participated in the operation of the business if said spouse was of undesirable character. So long as the fingerprints are taken before participation begins, the above threat is minimized to the extent rule 57 is effective and nothing would be gained by requiring any particular time interval between fingerprinting and participation.

In the instant case, petitioner's wife actually worked on the premises without having been fingerprinted. This violated the clear provision of rule 57. We are not called upon to decide whether the provision of rule 57 would be vague and uncertain if applied to different circumstances. Petitioner is limited in his attack to the application of rule 57 to the factual situation in which it was applied. (*Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446, 468 [55 P.2d 177] ; *Mercurio* v. *Department of Alcoholic Beverage Control, supra,* at pp. 631-632.) As stated in the *Kunsman* case, *supra,* at page 468: ''Respondent presents several hypothetical situations under which enforcement of the act would be inequitable or difficult, or, perhaps, even unconstitutional. It is elementary, of course, that a statute may be invalid as applied to one set of facts, yet valid as applied to another. (Citation.) The situations conjured up by respondent are not here involved, and respondent is limited in his attack to the application of the statute to the factual situation now before the court.''

Therefore, as there is no merit in either of petitioner's constitutional arguments and no other contentions have been presented for our consideration, his appeal must fail.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.