[Civ. No. 18828.   First Dist., Div. Two.   Sept. 13, 1960.]

THE PEOPLE, Respondent, v. MANOS FRANGADAKIS et al., Appellants.

———

*Assigned by Chairman of Judicial Council.

James C. Purcell and S. Lee Vavuris for Appellants.

Stanley Mosk, Attorney General, and Albert W. Harris, Jr., Deputy Attorney General, for Respondent.

STONE, J. pro tem.*—This appeal is from a decree enjoining a public nuisance.

## The Facts

The District Attorney of the City and County of San Francisco, on August 16, 1957, filed an amended complaint for the abatement of a public nuisance pursuant to Business and Professions Code, section 25604. It charged that defendant Manos Frangadakis had maintained a restaurant known as ''Manuel's Breakfast Club'' at 292 Turk Street in San Francisco without proper license, and was then maintaining for a consideration a place for the drinking of alcoholic beverages by members of the public. The complaint alleged that defendant Helen Frangadakis was the owner of the property and defendant Manos Frangadakis, her husband, was lessee thereof. It was also alleged that the district attorney did on March 7, 1957, give notice to the defendants in writing to remove, discontinue and abate said nuisance, and that defendants failed to comply therewith. In their answer defendants admitted that neither possessed the license required by section 25604, and they admitted receipt of the notice from the district attorney dated March 7, 1957, but each denied that the premises had been maintained as charged by the district attorney. By way of affirmative defense they alleged that section 25604 violates both the due process and the privileges and immunities provisions of the United States and California Constitutions. The court sitting without a jury found that defendant Manos Frangadakis was operating the premises at 292 Turk Street, San Francisco, in violation of section 25604 of Business and Professions Code, and that defendant Helen Frangadakis, his wife, the owner of the premises, had knowledge thereof. Business and Professions Code, section 25604, provides:

''25604. It is a public nuisance for any person to maintain any club room in which any alcoholic beverage is received or kept, or to which any alcoholic beverage is brought, for consumption on the premises by members of the public or of any club, corporation, or association, unless the person and premises are licensed under this division. It is a public nuisance for any person to keep, maintain, operate or lease any premises for the purpose of providing therein for a consideration a place for the drinking of alcoholic beverages by members of the public or other persons, unless the person and premises are licensed under this division. As used herein 'considera-

---

*Assigned by Chairman of Judicial Council.

tion' includes cover charge, the sale of food, ice, mixers or other liquids used with alcoholic beverage drinks, . . .

"The Attorney General or any district attorney may bring an action in the name of the people to abate the nuisance, and the Attorney General shall, upon request of the department, bring the action." (As amended Stats. 1955, ch. 447, p. 925, § 130.)

Agents of the Department of Alcoholic Beverage Control and police officers of the city of San Francisco visited the premises during the year 1957 on February 24, March 10, March 13, March 23, May 25, August 23, November 17, and during the year 1958 on January 12, January 24, February 15, March 8, April 12, October 4, December 14 and December 20. Upon each occasion the officers entered defendants' premises after 2 a.m.; they paid a $1.00 admission charge; a waitress either seated them at a table or approached the table after they were seated, and took an order; they were served a mix, either soda, Seven-up or water with ice; the charge was $.75 upon some occasions and $1.00 on others. Upon each visit, except those of August 23, 1957, and December 20, 1958, which will be discussed hereinafter, the officers brought whisky onto the premises and poured it into the cups of mix which had been served them, doing so in full view of everyone present. Upon these occasions they observed from 20 to 60 other persons on the premises, many of them pouring liquids from what appeared to be whisky bottles into cups furnished by the waitresses. An agent testified that on the morning of November 17, 1957, at 3:30 o'clock a.m., in addition to using whisky brought on the premises by himself, he purchased a half pint of whisky from the doorman who had previously collected the $1.00 admission fee. The agent gave a $10 bill to the doorman who placed it in the same cash register in which he had deposited the admission fees. From the register he took $5.00 change and handed it to the agent. Miguel M. Narro, an agent of the Department of Alcoholic Beverage Control, testified that he entered the premises December 20, 1958 (the action was tried December 22, 1958), at approximately 2:30 a.m., paying $1.00 to the doorman; that there were 50 or 60 people present; that a waitress wearing a small apron, carrying a towel with a service tray, took an order for a cup of coffee and a cup of Seven-up and ice, for which she charged $1.00 each. One officer poured White Label Scotch into his drink and placed the bottle on the table in plain sight. Narro testified he then called the waitress and asked what was

in his drink. She replied that there had been a mistake. Narro then asked if they had "booze," and said that he would like booze in the next drink. The waitress replied, "All we have is bourbon and scotch." The agent then ordered scotch, and the waitress went to the bar, obtained a drink, served it, and the agent paid her $1.00. The agent testified that the drink tasted and smelled as though it contained scotch or some kind of alcoholic beverage. The agent then arrested the waitress and conducted a search of the bar. On the second shelf below the back bar he found two glasses which "seemed to have contained scotch and bourbon."

## RIGHT TO JURY TRIAL

Before the action was set for trial the People made a motion in the department of the presiding judge to have the matter set in a nonjury department upon the ground that defendants were not entitled to a trial by jury. This motion was granted by the presiding judge. When the matter came on for trial, defendants renewed their motion for trial by jury. The trial judge, upon being advised that the presiding judge had, upon motion, removed the cause from the jury trial calendar, ordered the parties to proceed with the trial before him without a jury. Defendants contend they were entitled to a trial by jury as a matter of right under the provisions of California Constitution, article I, section 7. ██ The right to trial by jury in any particular proceeding is determined by whether the right existed at common law in 1850 when the Constitution became the law of the State of California. (*Farrell* v. *City of Ontario*, 39 Cal.App. 351, 356 [178 P. 740]; *People* v. *One 1941 Chevrolet Club Coupe*, 37 Cal.2d 283, 287 [231 P.2d 832].) Appellants place great emphasis upon the Farrell case, but a careful reading of the opinion reflects that the right to jury trial in an injunction action at common law in 1850 related to the legal remedy of damages for past injuries, not to the equitable remedy of injunction. In *Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal.2d 60 [87 P.2d 1045], the Supreme Court reviewed the cases on the subject, including the Farrell case, and concluded that in an injunction action where both legal and equitable remedies are sought, the parties are entitled to a jury trial only as to the legal issues. ██ We have found no case which holds that at common law in 1850 a party to an action was entitled to a jury trial of a purely equitable action to abate a nuisance. To the contrary, in *People* v. *One 1941 Chevrolet Club Coupe, supra,* cited by defendants, the Supreme Court said at page 298,

"The right of trial by jury did not exist at common law in a suit to abate a public nuisance. (*People* v. *McCaddon*, 48 Cal.App. 790, 792 [192 P. 325].) Hence it is not a constitutional right now."

Since the action before us is one to abate a public nuisance and no legal issue is presented, the defendants have no right to a jury trial. (*McCarty* v. *Macy & Co., Inc.*, 153 Cal.App.2d 837, 839 [315 P.2d 383].)

In connection with their argument concerning a right to a jury trial, defendants urge that it was error for the presiding judge to hear the motion to remove the cause from the jury trial calendar. ■■ A motion for either a jury or nonjury trial is properly presented to the presiding judge. Multijudge courts designate certain departments for trial of jury cases and others for nonjury trials to facilitate the orderly disposition of business. Motions concerning the right to trial by jury must necessarily be directed to the presiding judge who assigns the cases. We do not see how prejudice could result from such a practice since the several departments function as one court. (*Davis* v. *Conant*, 10 Cal.App.2d 73, 75 [51 P.2d 151].) ■ Further, there was no error here since appellants renewed their motion for trial by jury when the matter was called for hearing in the trial department. The record reflects the following motion,

"Mr. PURCELL: Before the first witness is sworn, if the Court please, at this time I desire for the record to state that we stand upon the demand heretofore made for a jury trial, and that we object to proceeding without a jury; and our being here is not to be construed as a waiver of our right to demand a jury heretofore made."

Following the motion there was some discussion as to whether or not an order had been made and, if so, its import. The discussion ended thusly:

"THE COURT: An order was made transferring it from the jury calendar to the court calendar for trial on the ground that the defendant was not entitled to a jury trial?

"Mr. AUSLEN: That is correct, your Honor.

"THE COURT: Call you (*sic*) witness."

Certainly the trial judge affirmed the action of the presiding judge, since defendants made it clear that they were not waiving their demand for a jury trial despite the order of the presiding judge.

■ The foregoing excerpt from the record bears also upon defendants' contention that the trial judge was denied an

opportunity to exercise his independent discretion in determining whether a jury should be impaneled to bring in an advisory verdict. Defendants' argument is untenable. They made no motion for an advisory jury and they were not entitled as a matter of right to have the court submit the questions of fact to an advisory jury. Nor can it be assumed that the court was unaware that it was exercising its discretion in ordering defendants to proceed with the trial. The record reflects that the court effectively, albeit summarily, exercised its discretion by ordering the parties to proceed without a jury.

## Search Without Warrant

■ Defendants next assign as error the admission into evidence of testimony concerning a search of the premises which resulted in the discovery of 127 bottles containing alcoholic beverages. They argue that it was an illegal search and seizure because the officers had no search warrant. The evidence discloses that agents for the Department of Alcoholic Beverage Control entered the premises at 2:15 a.m. on August 23, 1957. They paid a $1.00 admission charge to a doorman stationed at the entrance, and they observed other people paying an admission fee. There were 50 to 60 persons present. A waitress by the name of Sally Mason, carrying a tray, a towel, and wearing a short apron, directed them to a table. Two bartenders were working behind the bar, one of them being the defendant Manos Frangadakis. Five waitresses were securing drinks from the bar in cups which they placed on trays and served to the customers. Sally Mason approached the agents and asked what they would have and agent Boyle answered, "What have you got?" She replied, "We have got vodka, scotch and bourbon." Boyle and agent Jenner ordered bourbon highballs and the waitress went to the bar where defendant Manos Frangadakis was working, secured two drinks and served them. Boyle testified that from his 20 years of experience as an agent he recognized both the odor and taste of whisky in the drink. He further testified that the drink was weak, so he called the waitress back and told her that he and his companion wanted double shots over the rocks. She got them different drinks for which he paid her $2.00 each. The drinks were served in coffee cups which were similar to coffee cups other patrons had before them. The officers then arrested Sally Mason and the doorman. Boyle testified that, "I asked the men behind the bar who the boss was, and Mr. Frangadakis told me he was. The Court: Which Frangadakis?

The Witness: Manos Frangadakis. I told him and his bartender, Mr. Flanges, that they were under arrest and turned them over to the uniformed officers." Boyle then asked defendant to open the door of a locked room marked "office," but he refused to do so or to furnish the key. Another agent then produced a key which he had retrieved from a sink in the kitchen into which it had been thrown by an employee. The key was used to open the door to the room in which the liquor was discovered. The search was made incident to a lawful arrest and the record reflects that there was reasonable cause for the arrest. The evidence was admissible since it related to the crime which had been committed in the presence of the arresting officers who then made the search. (*People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40] ; *People* v. *Adame,* 169 Cal.App.2d 587, 598 [337 P.2d 477] ; *People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582].)

### Admissibility of Declarations of Employees

Defendants assert that it was error for the court to permit agents to relate conversations between them and the doorman, and conversations between the agents and several of the waitresses. Defendants argue that since they were not in the immediate vicinity when the conversations occurred, the statements were inadmissible hearsay. However, before the witnesses related the conversations, an ostensible employment had been proved. The record reflects that the doorman had been observed collecting admission fees from each person who entered the premises, and that he had deposited the admission fees in the cash register on the defendants' premises. On one occasion an agent purchased a half pint of whisky from the doorman, who placed the $10 which the agent gave him in the cash register in which he had been placing the admission fees, and from it he withdrew a $5.00 bill which he handed to the agent as change for the purchase of the liquor. The defendant was in the area at the time. It was also shown that on many other occasions, while the waitresses were taking orders from the customers, defendant Manos Frangadakis was on the premises, and at times was filling orders at the bar. In fact, he acted as bartender upon the occasion when the waitress told the agents that they had bourbon, scotch and vodka. She filled their order for bourbon and water highballs by obtaining them from the bar at which defendant was working. The waitresses were carrying trays and towels, wearing aprons, and waiting on customers. Certainly an ostensible employment was estab-

lished as to both the waitresses and the doorman. ▮ Agency may be proved by circumstantial evidence. In *Anglo-California Bank* v. *Cerf*, 147 Cal. 393, the court said at page 399 [81 P. 1081],

"It cannot be doubted that where the authority of an agent is unwritten, and express oral authority is not satisfactorily shown, such authority may be implied from the acts and circumstances shown."

▮ Although the waitresses and the doorman in this case were employees rather than agents, the rules of evidence relating to agency and employment are the same insofar as establishing the relationship is concerned. Witkin in Summary of California Law, volume I, page 375, states:

"(c) *Agent Distinguished from Servant.* There is seldom any reason to distinguish between the *service* of an agent and that of a servant or employee. Most of the rules relating to duties, authority, liabilities, etc., are applicable to servants as well as other agents. The Restatement, *e.g.*, makes the bulk of its sections on agency applicable to master and servant by cross-references. (See Rest., Agency, §§ 2, 25, 142, 318, 361, 429, 461.)"

Under the authority of *Anglo-California Bank* v. *Cerf*, *supra*, the trial judge properly admitted the conversations in evidence upon the ground that the employment could reasonably be implied from the circumstances proved. (See also *Wright* v. *Lowe*, 140 Cal.App.2d 891, 896 [296 P.2d 34] ; 2 Cal.Jur.2d 691; *Hahn* v. *Hahn*, 123 Cal.App.2d 97, 102 [266 P.2d 519] ; 19 Cal.Jur.2d, § 459, p. 212.)

▮ The statements were also admissible as "verbal acts." Each conversation was an integral part of the particular transaction about which testimony was being given. An extrajudicial act or declaration may be admitted into evidence where it tends to explain or show the character, motive, purpose, or intent of the act or transaction in dispute. (Code Civ. Proc., § 1850, 19 Cal.Jur.2d 204; *Orella* v. *Johnson*, 38 Cal.2d 693, 696 [242 P.2d 5] ; *People* v. *Mahoney*, 201 Cal. 618, 621 [258 P. 607] ; *People* v. *Brown*, 131 Cal.App.2d 643, 656 [281 P.2d 319] ; *Hahn* v. *Hahn, supra.*)

### Sufficiency of the Evidence

▮ Defendants' next contention is that there is no substantial evidence in the record to support the court's finding that a public nuisance was maintained on the premises in violation of Business and Professions Code, section 25604. The

evidence which the record reflects, as hereinbefore related, discloses that the evidence is, to state it tritely, overwhelming. Latent in defendants' argument is the implication that they are to be presumed innocent, and that the People had the obligation of proving its case beyond a reasonable doubt. This impression is abetted by the failure of either defendant to testify in his own behalf and deny any of the evidence adduced by the People. This being a case in equity, the burden of the People was to prove the case only by a preponderance of the evidence.

Defendant Helen Frangadakis argues that there was insufficient evidence to support the finding that she, as owner of the property, was aware of the acts being committed upon the premises which her husband leased from her. By the pleadings she admitted ownership of the property and that she was lessor. She also admitted receiving a letter from the district attorney dated March 7, 1957, giving notice to remove, discontinue and abate the nuisance. The amended complaint upon which the matter went to trial was filed August 16, 1957, more than five months after receipt of the notice by her. The action was tried December 22, 1958. The evidence discloses that the condition about which she received notice on March 7, 1957, continued as late as December 20, 1958, two days before trial, or one year and nine months after receipt of the notice. Defendant lessor cannot be heard to argue that she kept herself uninformed about the activities on the premises which she owned, after receiving notice of the public nuisance being maintained thereon. A lessor may not intentionally avoid the consequences of his lessee's actions by simply refusing to recognize a notice that a nuisance is being maintained on the leased premises, nor may he sit idly by and not attempt to inform himself of the truth of the accusation. The failure of defendant to testify on her own behalf and deny knowledge of the condition, together with her admission in her answer that she received notice from the district attorney months before trial, support the finding of the trial court that she had knowledge of the existence of the nuisance. In *People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3], Mr. Justice Traynor, speaking for the court, said at page 493,

"It is common experience that the failure to explain or deny adverse evidence that a defendant may reasonably be expected to explain or deny tends to show the credibility of such evidence and renders more probable the unfavorable tenor thereof. [Citations.]" (See also *People* v. *Williams,*

53 Cal.2d 299 [1 Cal.Rptr. 321, 347 P.2d 665]; *People* v. *Ashley,* 42 Cal.2d 246, 268 [267 P.2d 271].)

### Constitutionality of Section 25604 of Business and Professions Code

Defendants' final contention is that Business and Professions Code, section 25604, is unconstitutional for two reasons. One, that the section conflicts with the Constitution of the United States and of the State of California, in that it provides for a deprivation of individual liberty and private property without due process of law. This argument is devoid of merit. The people of the State of California by constitutional amendment, article XX, section 22, invested the Department of Alcoholic Beverage Control, as successor to the State Board of Equalization, with the exclusive power to license the sale of intoxicating liquors within the State, and in its discretion, to deny or revoke any specific liquor license for good cause when contrary to public welfare or morals. Said constitutional amendment provides:

"It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State." And that:

"All alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the legislature." (Cal. Const., art. XX, § 22, amended Nov. 2, 1954; Nov. 6, 1956, operative Jan. 1, 1957.)

To implement the constitutional mandate, the Legislature enacted the "Alcoholic Beverage Control Act" (Bus. & Prof. Code, §§ 23000 to 26004). Among other things it provides rules and regulations governing the manner in which alcoholic beverages may be *consumed.* The legislation constitutes an exercise of the police power vested in the Legislature by article XX, section 22 of the Constitution. The constitutionality of the A.B.C. Act as a valid exercise of the police power has been established beyond question. (*Tokaji* v. *State Board of Equalization,* 20 Cal.App.2d 612 [67 P.2d 1082]; *Cooper* v. *State Board of Equalization,* 137 Cal.App.2d 672 [290 P.2d 914]; *Schaub's, Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 858, 869 [315 P.2d 459]; *Sibert* v. *Department Alcoholic Beverage Control,* 169 Cal.App.2d 563, 565 [337 P.2d 882].)

Defendants' other alleged ground of unconstitutionality is that said section is ambiguous, unintelligible and uncertain.

The test for determining whether or not a statute is unconstitutional by reason of ambiguity or unintelligibility, is stated in *In re DiTorio*, 8 F.2d 279, 281, as follows:

"An act is void where its language appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate."

In *Perez* v. *Sharp*, 32 Cal.2d 711 at page 728 [198 P.2d 17], the California Supreme Court adopted the rule of the DiTorio case.        Applying this test, we find no impediment to the application of section 25604. There is nothing ambiguous or unintelligible in the language, "It is a public nuisance for any person to keep, maintain, operate or lease any premises for the purpose of providing therein for a consideration a place for the drinking of alcoholic beverages by members of the public or other persons, unless the person and premises are licensed under this division." When construed or applied to the circumstances under which it was intended to operate, namely, in the light of the other provisions of the Alcoholic Beverage Control Act of which the section is a part, it is completely free from ambiguity.

## The Decree

The decree, however, must be modified in part. It reads as follows:

"It Is Hereby Ordered, Adjudged and Decreed that the defendants, Manos Frangadakis and Helen Frangadakis, their heirs and assigns, be and are hereby enjoined and restrained from using or permitting the use of the premises more particularly known and described as Manuel's Breakfast Club, 292 Turk Street, San Francisco, California, for the purpose of providing therein for a consideration a place for the drinking of alcoholic beverages by the members of the public and other persons; and as used hereinabove, consideration includes cover charge, the sale of food, ice mixers, or other liquids used with alcoholic beverage drinks, or the furnishing of glassware or other containers for use in the consumption of alcoholic beverage drinks . . . ;"

Insofar as it purports to enjoin the heirs and assigns of the defendants Manos and Helen Frangadakis, it exceeds the jurisdiction of the court. The action is *in personam,* not *in rem,* and the heirs and assigns are not parties. The decree must be modified by striking the words, "their heirs and assigns." Also, the decree categorically enjoins defendants from serving alcoholic beverages or mixes for a consideration, yet it is

unlawful to use the premises for such purposes only without a license. Should defendants secure the license required by Business and Professions Code, section 25604, they would not be maintaining a nuisance. The decree must be modified by adding the words, "in violation of section 25604 of the Business and Professions Code."

Affirmed as modified.

Kaufman, P. J., and Draper, J., concurred.